McCARTAN, RESPONDENT, v. PARK BUTTE THEATER CO., APPELLANT.

(No. 7,586.)

(Submitted November 5, 1936. Decided November 18, 1936.)

[62 Pac. (2d) 338.]

*Mr. R. F. Gaines,* for Appellant, submitted a brief and argued the cause orally.

*Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action instituted in the district court of Silver Bow county for damages alleged to have been caused by the negligence of defendant, Park Butte Theater Company, in the operation of its theater, whereby plaintiff, Winnifred Mc-Cartan, was injured.

Defendant was operating a moving picture theater in the city of Butte, and the public generally was invited to attend. On the evening of July 4, 1935, plaintiff visited the theater. She purchased a ticket entitling her to a seat in the balcony and then proceeded up a runway to the second floor where the balcony was located; she was accompanied by four of her children. When they arrived at the balcony, they were met by an usher who proceeded to conduct them to seats. The usher started down one of the main aisles which ran across the balcony and was followed by plaintiff and the children. The usher and three of the children preceded plaintiff; the usher carried a flashlight. From the aisle along which they were walking there was another aisle running up and toward the back of the balcony. At the point where this aisle joined the aisle along which the party proceeded there was a step which extended about eight inches out into the aisle along which they were conducted by the usher. The usher and the three children in front of plaintiff passed this step without difficulty, but plaintiff struck her foot against the step, stumbled and fell to the floor. For the injuries which she claimed to have sustained, she instituted this action to recover damages. She alleged that the step over which she fell, protruding, as it did, into the aisle, created a dangerous condition at a point where patrons of the theater were invited to walk, and where one would not be likely to observe it.

Plaintiff claimed, and adduced evidence to show, that the lights in the theater were so dim that she could not see the offending step as she walked along the aisle. She claimed that the region surrounding the step was in complete darkness, and that she failed to see it although she was looking down at the floor ahead of her as she walked along; she did not claim that the step was out of repair. She did allege negligent construction, in having the step protrude out into the aisle where customers were expected and invited to walk. She also alleged that defendant was negligent in failing to have sufficient light, or any light, to disclose the presence of · the step, or to warn patrons of its presence in the aisle.

The above allegations were controverted by defendant. It attempted to show that the step did not constitute a structural defect; that the theater was at the time of the accident lighted in the manner approved and practiced by theaters generally; and that the usher so held her flashlight that plaintiff could and should have seen the step if she had been looking.

The cause was tried to the court and a jury. During the course of the trial defendant made timely motions for nonsuit and directed verdict. Both motions were denied, and the matter was submitted to the jury with instructions by the court. The jury returned a verdict for plaintiff in the sum of $3,500. In accordance therewith judgment was entered. Defendant's motion for a new trial was denied, and thereafter this appeal was perfected.

Although several specifications of error are urged, they really present only two questions of law for decision. Defendant's motions for nonsuit and directed verdict were based upon the grounds that the evidence failed to support any charges of negligence against defendant; that the evidence affirmatively disclosed that any injury sustained by plaintiff was proximately and solely caused by her own carelessness; and that she had assumed the risk of the conditions which were shown to have existed in the theater at the time and

place of the accident. The same grounds were urged by defendant in its objections to several instructions given by the court, and upon which defendant now predicates error. Thus the first important question presented is whether the evidence supports the charges of negligence, or whether, as defendant contends, the evidence affirmatively shows that plaintiff is barred from recovery by her own contributory negligence or assumption of risk. If these matters are resolved in plaintiff's favor, defendant then contends that the damages awarded are excessive.

The question of liability of a theater for injuries sustained therein by its customers and patrons was considered by this court in two rather recent cases, both of which we think are in point here: *Bennetts* v. *Silver Bow Amusement Co.*, 65 Mont. 340, 211 Pac. 336, 341, and *Gray* v. *Fox West Coast Service Corp.*, 93 Mont. 397, 18 Pac. (2d) 797, 799. Under· the authority of these cases, it is manifest that the law imposes upon one in the position of defendant the duty to use ordinary care to have the premises reasonably safe, and to warn its customers of any hidden or lurking danger thereon.

Defendant, however, contends that the evidence in this case fails to disclose that any similar step ever had a light "in, upon or about" it, or that other theaters were ever lighted in any other, different, or better fashion than defendant's premises were lighted at the time plaintiff was injured. Defendant further contends that there is no evidence of negligent construction. In this connection it refers to the case of *Gray* v. *Fox West Coast Service Corp.*, supra, wherein it was stated that "the presence of the step itself, if not out of condition, was no evidence of faulty construction. No evidence was offered to show that the step was inherently dangerous of itself, or that its presence there constituted a structural danger or menace to safety, provided, of course, it was properly lighted. It was not *per se* faulty construction to maintain a step at the point of intersection of the two aisles where plaintiff fell."

The foregoing language might, indeed, be applicable and ▇ persuasive here, if, as defendant contends, the evidence actually failed to sustain plaintiff's charge of negligence with respect to insufficient lighting and a failure properly to warn of a hidden danger in the form of the step; however, such is not the state of the record before us. On the contrary, it appears that there is considerable conflict in the evidence with reference to the manner in which the theater was lighted; as to whether the step could be seen or whether it was in total darkness, and as to whether the usher turned the light from her flashlight upon the step so that plaintiff could have seen it if she had been looking. In such circumstances, the matter became a proper question for determination by the jury. (See *Bennetts* v. *Silver Bow Amusement Co.*, supra; *Pullen* v. *City of Butte*, 45 Mont. 46, 121 Pac. 878; *Fox Tucson Theatres Corp.* v. *Lindsay*, (Ariz.) 56 Pac. (2d) 183, 185.)

The last-cited case is very similar to the case at bar. In the course of its opinion in that case the supreme court of Arizona said: "It is obvious that the kind and amount of lighting necessary will depend on the nature of the place involved and the character of the persons who are invited to patronize it, and that unless we can say, as a matter of law, that the lighting was sufficient in quantity to make it safe, it is a question of fact for the jury in each particular case as to whether the condition in which it was maintained constituted negligence which was the proximate cause of the injury. In the cases cited by defendant which held no liability existed, the result was almost invariably reached by the conclusion of the court that the evidence showed that under the circumstances the lighting was sufficient, or else that plaintiff was guilty of contributory negligence. We are of the opinion, after examining the evidence in regard to the condition of the lounge and lobby, that we cannot say, as a matter of law, that it was so lighted that it was reasonably safe for plaintiff to use, and that the jury was not justified in finding the lack of sufficient light was the proximate cause of the plaintiff's injury." (See, also, 62

C. J. 869, and cases cited.) The present case presents a similar situation. The question was a proper one to be submitted to the jury, and the evidence is such that we are not warranted in disturbing the jury's decision upon the matter.

We are not impressed with the suggestion that it can and should be said, as a matter of law, that plaintiff is barred from recovery by her own contributory negligence or assumption of risk. This court has frequently held that contributory negligence and assumption of risk are matters of affirmative defense and must be pleaded as such in order to be available to a defendant, unless they appear from the allegations of the complaint, or unless plaintiff's own case raises a presumption of their existence. (See *Nord* v. *Boston & Mont. Con. C. & S. Min. Co.*, 33 Mont. 464, 84 Pac. 1116; *Birsch* v. *Citizens' Electric Co.*, 36 Mont. 574, 93 Pac. 940; *Mihelich* v. *Butte Electric Ry. Co.*, 85 Mont. 604, 281 Pac. 540; *Olson* v. *City of Butte*, 86 Mont. 240, 283 Pac. 222, 70 A. L. R. 1352; *Toole* v. *Paumie Parisian Dye House*, 98 Mont. 191, 39 Pac. (2d) 965.)

Here the defendant did not plead contributory negligence or assumption of risk, and it cannot be said that plaintiff's evidence raises any presumption of such matters upon which defendant can rely. The most that can be said of the evidence, taken as a whole, is that it is conflicting; hence it was a proper case for submission to the consideration of the jury. (*Fox Tucson Theatres Corp.* v. *Lindsay*, supra; *Bennetts* v. *Silver Bow Amusement Co.*, supra.) As was said in the last-cited case: "Under all of the facts in this case, we think it was a question for the jury to determine whether or not the defendant had performed the duty which, under all circumstances, it owed to the plaintiff. It follows that the motion for a directed verdict was properly overruled." (See, also, *Brown* v. *Columbia Amusement Co.*, 91 Mont. 174, 6 Pac. (2d) 874, 879.) The jury obviously resolved the issues thus presented in plaintiff's favor. The record discloses that there

is sufficient evidence to sustain that conclusion. It follows, therefore, that the finding cannot be disturbed.

An examination of the record discloses the fact that there was no serious controversy as to the admission of evidence. We are convinced that the instructions were sufficient and that no error was committed by the trial court in the refusal of offered instructions or in giving of the instructions which were the law of the case for the jury. It is true that some of the offered instructions would have emphasized certain phases of the case and no error would have been committed in the giving thereof. However, all of the elements of the case were covered by the instructions given, and the offered ones, although some of them stated the law, would have constituted mere repetition.

What we have said in this opinion is sufficient to demonstrate our view of the law of the case. The court in the instructions as a whole fairly stated what we think was the proper theory and rules of law applicable to the case. It is not necessary to discuss each instruction or offered instruction separately.

The final specification of error goes to the size of the verdict and presents a very difficult proposition. This is a matter that has been troublesome to courts everywhere. The specification "excessive damages appearing to have been given under the influence of passion or prejudice" has been before this court on several recent occasions. The rule was stated in *Brown* v. *Columbia Amusement Co.*, supra, a case similar to this one, and a case that appellant charges constituted the important precedent for the procedure and steps characterizing this case. There the rule was stated as follows: "A new trial may be granted for 'excessive damages, appearing to have been given under the influence of passion or prejudice' (sec. 9397, Rev. Codes 1921), and, in order to avoid a new trial, courts sometimes give the prevailing party the option of remitting the excess (*Chicago Title & Trust Co.* v. *O'Marr*, 25 Mont. 242, 64 Pac. 506), but the difficulty in determining

whether * * * damages in personal injury cases are excessive, arises from the fact that there is no rule by which the question can be determined and the citation of authorities is of little assistance. No two cases are alike; verdicts as large or larger have been sustained where the injury was no greater than was here shown, and judgments as small or smaller have been reduced or scaled. The rule in this jurisdiction is declared to be that 'so long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid, unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive.' " (Citing cases.)

We are confronted by the exact situation described by the court in the foregoing language. Plaintiff contends that the injury and subsequent damages suffered here were as great or even more aggravated than those appearing in the *Bennetts Case*, supra, wherein the same sized verdict was under consideration. Of course, each case must stand upon its own facts, so that comparison is of little value. This was pointed out in the case of *Brown* v. *Columbia Amusement Co.*, supra.

An extended discussion of the evidence would serve no purpose. It is sufficient to say that the injury sustained by plaintiff was a sprained ankle. The only medical testimony offered by either side was given by Dr. Shields, a reputable physician of Silver Bow county who treated plaintiff soon after the injury and continued to treat her or observe her until the time of the trial, which was between six and seven months after the accident.

Dr. Shields was apparently very moderate and conservative in his declarations relative to the case. He said he would class the injury as "a severe sprained ankle." He described all the symptoms and possible results that might flow from the injury. He said he thought the patient very largely recovered from the injury, but he did not give a positive opinion to that effect. He explained the possibilities of continuing dis-

ability and stated that a sprain may be more serious and require more time than a fracture of the long bone that does not involve a joint. He explained the possibility of recurrent sprains and generally explained the whole matter in a very fair and comprehensive manner.

Plaintiff herself explained her inability to work and follow her usual occupation of sewing, particularly the difficulty of operating a sewing machine. She testified that she had made a living for herself and her children since the death of her husband by custom sewing, and that she found it impossible to continue that occupation since the accident. She explained her inability to do housework, particularly the difficulty experienced in, and the pain resulting from, the lifting of buckets of coal and the moving of other heavy objects. All of these facts were detailed at great length and argued and submitted to the jury under proper instructions; undoubtedly they were questions for the jury. Plaintiff evidently convinced the jury that she had not recovered from the injury at the time of the trial, and that fact must have had some weight with the jury in arriving at the amount of damages.

The question is not actually the amount of damages, unless the result of the deliberations of the jury is such as to shock the conscience and understanding of the court. This principle has been given consideration by this court in the following cases: *Kelley* v. *John R. Daily Co.*, 56 Mont. 63, 181 Pac. 326; *Staff* v. *Montana Petroleum Co.*, 88 Mont. 145, 291 Pac. 1042; *Allen* v. *Bear Creek Coal Co.*, 43 Mont. 269, 115 Pac. 673; *Forquer* v. *North*, 42 Mont. 272, 112 Pac. 439; *Wise* v. *Stagg*, 94 Mont. 321, 22 Pac. (2d) 308; *Tanner* v. *Smith*, 97 Mont. 229, 33 Pac. (2d) 547; *Fulton* v. *Chouteau County Farmers' Co.*, 98 Mont. 48, 37 Pac. (2d) 1025, 1034; *Ashley* v. *Safeway Stores, Inc.*, 100 Mont. 312, 47 Pac. (2d) 53, and other cases in various jurisdictions too numerous to mention.

In the case of *Bennett* v. *Gusdorf*, 101 Mont. 39, 53 Pac. (2d) 91, the matter was given consideration, but in that case the assignment was coupled with another assignment involving

the admission of testimony. There it was held that the offending testimony would naturally have a tendency to create prejudice on the part of the jury.

In the case of *Fulton* v. *Chouteau County Farmers' Co.,* supra, the court reiterated the principle that "there is no fixed measuring stick by which to determine the amount of damages, other than the intelligence of the jury." In that case the court approved an unusually large verdict, but justified the same by reason of the facts of the case.

A careful reading and fair consideration of the evidence in this case does disclose that possibly, and perhaps probably, the verdict may be unusually liberal, but it is not so large as to shock the conscience of the court. It is possible that the fact that the plaintiff is a widow with children to support may have had some weight with the jury. It is also a fact that shortly after the accident—in fact the next day or two thereafter—a lawyer was employed and the groundwork and foundation for a personal injury suit were laid, so that the deductions of the defendant that there was a plan immediately inaugurated and consistently pursued to obtain exorbitant damages may have some foundation in the facts and circumstances surrounding the case. Nevertheless these things all went to the jury for what they were worth. The first considerations might have militated in plaintiff's favor. The second consideration might have minimized the damages. It is not for this court to say that either of these considerations or that any consideration involved in the case was accepted or rejected by the jury.

It is our province to consider the whole matter and to set aside the verdict only where the amount of damages cannot be reconciled with a conscientious interpretation of the evidence or a rational understanding of the facts as a whole. It is only when such a contingency arises and exists that we can say that the conscience and understanding of the court are shocked; then the matter presents a question of law rather than of fact. (*Ashley* v. *Safeway Stores, Inc.,* supra.)

Here the jury must have believed that plaintiff still endured pain and suffering as a result of the injury, that she was unable to do her housework, as she testified, and that she was unable to follow her occupation and unable to earn a living for herself and her children. Having recourse, as we must, to the only medical testimony in the case—the evidence of Dr. Shields—we find ourselves unable to say that the verdict shocks the understanding and conscience of the court.

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in the foregoing decision.