ADAMS, Administratrix, Respondent, *v*. MISENER, Appellant.

(No. 9,309.)

(Submitted September 16, 1942. Decided October 9, 1942.)

[131 Pac. (2d) 472.]

560

*Mr. Fred C. Gabriel* and *Messrs. Speer & Hoffman,* for Appellant, submitted a brief; *Mr. Harvey B. Hoffman* argued the cause orally.

562

564

*Messrs. Burns & Thomas,* for Respondent, submitted a brief; *Mr. Harry Burns* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

Action in damages for injuries to person and property. No-vember 4, 1939, Steve J. Adams, a man 64 years of age, resident of Havre, a dealer in coal, hay and similar products which he delivered at various points in Havre and east and west of there along the Great Northern Railway line, after delivering a load of coal at Dodson, Montana, picked up a return load of hay at the Bryan Stevens ranch some five miles west of the town of Dodson, and drove to the Roosevelt highway, which passed through Stevens ranch, and turned west toward Havre. In addition to 42 bales of hay, Adams truckload consisted of several bags of grain and a calf. He had not proceeded far on his way to Havre when an oil truck, with trailer attached, passed him, and it is alleged by plaintiff that just after passing the Adams truck the oil truck ''pulled in short'' in front of Adams and forced him off the highway, causing his truck to go into the ditch and turn over several times, scattering the load over the ground and seriously injuring Adams. The oil truck pro-ceeded on its way to Havre, and, according to the testimony of two of the occupants of the oil truck they were not aware that an accident had occurred until arriving at Havre.

The accident occurred about five o'clock p. m. Adams was rendered unconscious and was taken to Dodson where first aid was administered, and upon advice of the accident reaching his family at Havre, his daughter and her husband drove to Dodson and took him to Havre, where he was confined at the daughter's home for a short time and then taken to a hospital. It appears that he was not in robust health prior to the accident, but after the accident he was not physically able to conduct his usual business operations and died on September 9, 1940.

Counsel for plaintiff in his argument before this court stated that it was not contended that Adams' death was due to the accident. Prior to his death he had commenced this action, and

after his death his wife, as administratrix of his estate, was substituted as plaintiff.

The complaint alleges reckless and negligent driving of the defendant's truck in that, in passing the plaintiff, the defendant crowded the plaintiff's truck off the highway which resulted in Adams' injuries and the damage to his truck and other property. Recovery is sought for both personal and property damage, for hospitalization and medical services. The answer was a general denial. When the cause was set for trial, defendant moved the court, supported by the affidavit of H. B. Hoffman, of counsel, for an order vacating the setting of the cause and requesting that it be reset at the following term. The affidavit was to the effect that Charles Allingham, the driver of the defendant's truck, a co-defendant in the action and a material witness, could not be present at the trial on the date set on account of serious illness, and the attending physician would not permit the taking of his deposition. This affidavit was supported by a further affidavit of the physician. The motion to vacate was argued July 8, 1941. The plaintiff resisted the motion but offered to stipulate that the action might be dismissed as to Allingham, and further offered to stipulate that Allingham would testify, if present, to the facts as set forth in the affidavit of attorney Hoffman. The court denied the motion to vacate.

The cause came on for hearing July 10, 1940, before the court sitting with a jury. Numerous witnesses testified for both sides; arguments were heard and the jury was duly instructed by the court. A verdict was returned for the plaintiff, allowing a recovery in the amount of $4,188. This amount was made up of the following items: $3,500 was allowed as general damages; $490 for loss of earnings, and $198 for damages to plaintiff's truck. The court allowed costs in the sum of $198.58, making a total award of $4,386.58, with interest thereon at six per cent. per annum. A motion for a new trial was made, heard and denied. Thereupon the defendant appealed.

Two specifications of error are assigned; the first is on the

 court's overruling defendant's motion to vacate the setting of the cause and the resultant loss to the defendant of Allingham's testimony. Defendant alleges abuse of discretion by the court in denying his motion to vacate the setting of the cause. The record shows that "counsel for plaintiff in his argument opposing the motion to vacate offered to stipulate that the action might be dismissed as to defendant, Charles Allingham, and further offered to stipulate that Charles Allingham would testify as set forth in the affidavit of H. B. Hoffman, and that same might be read to the jury, subject to any legal objections."

In the argument counsel for plaintiff contends, and we think the contention is sustained by the record, that the facts that the affidavit of counsel stated Allingham would testify to were supplied in all material respects by other witnesses who testified for the defendant, and, therefore, Allingham's testimony would merely have been cumulative.

It was further contended by plaintiff that the trial had been unduly delayed, the complaint having been filed in January, 1940, and no jury term having been held in the county until July, 1941, practically eighteen months later, that a further delay would be detrimental to the interests of the plaintiff. The legal questions involved in this assignment are fully covered by section 9332, Revised Codes, which provides:

"A motion to postpone a trial on grounds of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it. The court may also require the moving party to state, upon affidavit, the evidence which he expects to obtain, and if the adverse party thereupon admits that such evidence would be given, and that it be considered as actually given on the trial, or offered and overruled as improper, the trial shall not be postponed * * *."

The requirements of the section were substantially complied with by the plaintiff in opposing the motion to vacate the setting, and there was no abuse of discretion by the court in deny-

570

ing the motion, which in effect was a request for postponement. (*State* v. *Kuilman*, 111 Mont. 459, 110 Pac. (2d) 969; *Orem* v. *Hansen Packing Co.*, 91 Mont. 222, 7 Pac. (2d) 546; *Ward* v. *Strowd*, 76 Mont. 93, 244 Pac. 1007; *Hunt* v. *Van*, 61 Mont. 395, 202 Pac. 573; *Downs* v. *Cassidy*, 47 Mont. 471, 133 Pac. 106.)

The second specification of error is on the alleged misconduct ██ ██ of plaintiff and her counsel in bringing attention to the jury of the fact that defendant carried liability insurance, and certain other charges of misconduct as will appear from the assignment. For the reasons that will presently appear, we quote this assignment in full from the brief of defendant:

"Misconduct of the plaintiff and of her counsel in bringing to the jury, attention that any damages awarded would have to be paid by the defendant, Misener's insurance company; said error appears in:

"(a) The questions by plaintiff's counsel and her answers during the trial to the jury, duly excepted to, to-wit:

"Q. Did he [Mr. Adams] get out at all during the winter? A. No, he did not. He never left the house.

"Q. About how long was he confined to the home? A. Well, I imagine until about the first of May.

"Q. Now, then, Mrs. Adams you said he did not get out of the house at all, but as a matter of fact, he was taken up to Dr. Larson's office, was he not? A. Yes.

"Q. Do you recall another time that Dr. McKenzie examined him? A. Yes, the insurance company for Mr. Misener sent to have their doctor—

"Mr. Burns: Just a minute, may that be stricken as not responsive?

"By the Court: Yes, the jury will disregard that testimony entirely. When a volunteer statement is made by a witness, counsel may ask that it be stricken, and, if it is ordered by the Court to be stricken, then you shall disregard it, and not consider it as evidence in this case. The last statement of the witness is a volunteer statement, and you will disregard it.

"Mr. Hoffman: Note an exception.

"(b) The closing argument to the jury by plaintiff's counsel in substance and effect that Mr. Misener himself would not pay the damages for injuries sustained, evidence by counsel's argument to the jury:

"Why didn't Mr. Misener tell Steve Adams who he was that evening on the road, if he saw him as he says he did? I do not know whether he had seen Mr. Hoffman about the accident or not at that time, or whether he just figured that Mr. Hoffman would take care of him anyway.

"(c) Careless or inopportune remarks made by plaintiff's counsel outside the court room door in the corridor in the presence of others who may have been in the jury panel, in substance and effect that the 'Insurance Company' should settle this case so we can go home and forget about it, suggesting, if not the amount that counsel thought the insurance company should pay and that the plaintiff wanted, at least culpability in refusal to meet its obligation."

Both the defendant and attorney Hoffman, of his counsel, filed affidavits setting out the charges mentioned in the assignment of error in support of the motion for a new trial. These charges against counsel for the plaintiff are a matter of surprise to this court. Mr. Burns filed a counter-affidavit denying with some warmth the charges made against him. He has frequently appeared and argued cases before this court running over a long period of years, and has in no instance failed to demean himself before us in a manner in full accord with his obligations as an officer of the court and as a gentleman of honor. As it was necessary for this court to consider the charges in connection with the assignments of error and therefore give currency to such charges in our decision, we deem it our duty to join with the able trial judge in exonerating Mr. Burns from the misconduct alleged. For this purpose we quote here the "Opinion on Motion for New Trial" inserted in the record by Judge Hurly, who presided in the case in the court below:

"Heretofore, the court has denied the motion for new trial in this action and at the time of submitting the same, stated

it would later file its opinion in connection therewith. I believe counsel are familiar with some things which have arisen in the court at Malta and which have, in part, caused the delay.

"Counsel for the defense has argued at considerable length that there was a conversation between Mr. Burns and himself on a day or two prior to the trial, in which some reference was made to the defendant being insured. This matter was never in any way called to the attention of the court in the examination of the jurors, or in any talk between counsel and the court, and the first that this court ever heard of any such conversation was upon motion for new trial. I do not recall that any juror was asked on his voir dire if any one of them had overheard a conversation between Mr. Burns and Mr. Hoffman and Mr. Misener, or any of them, in any way pertaining to the case. A question of this kind might perhaps have thrown some light on the situation. I do not think the court should now be put in error for something which was not disclosed to the court, but which counsel apparently carried in his own bosom on the theory that perchance some juror may have overheard this conversation, and there is nothing in the affidavit which indicates that any such jurors did hear the same.

"It was also alleged as a ground of error that on the argument to the jury, Mr. Burns made some alleged improper remarks. The court has had the stenographer search the record and the court has searched its own memory, and, while not pretending to remember the course of the argument in detail, certainly it should not be said that error was committed in the argument which was not objected to at the time of trial, or not asked to be taken down by the court stenographer.

"The court is of the opinion that the statement made by the plaintiff in answer to counsel's question was inadvertent. The court promptly and energetically admonished the jury to disregard the answer of the witness, striking it from the record, and, while the court did not use the word 'insurance' in the admonition, it refrained from using it purposely because it felt that any admonition which contained the word would thereby

direct the attention of the jury specifically to the fact that perhaps the witness intended to inject insurance into the record. Unfortunate as the remark is, counsel asked the witness if she recalled a time when Dr. McKenzie examined her husband, and she merely mentioned that the insurance company for Mr. Misener sent to have their doctor—and there she was interrupted. I think that remark, coupled with the further reason that counsel for the defendant did not object, merely noting an exception, which, if the cold record were examined, might be to the court's remarks rather than to any statement of the witness, is not sufficient grounds for a new trial. There was no motion to strike the testimony, no motion for nonsuit was made, nor was any other motion made until the motion for new trial was presented. In addition, the records show that Mr. Burns, himself, moved to strike the answer. The court is not inclined to believe nor does it believe that Mr. Burns intentionally asked the question, as inferred by counsel, with the thought of jeopardizing his case.

"As to the alleged comments of Mr. Burns in the argument to the jury, it would be as fair to argue that counsel for the defendant's interrogatory to the jury in his argument, inferring that plaintiff and her husband were separated at the time of the accident, was error. Certainly there was no foundation in the record to indicate this, but there was a plain innuendo to that effect in counsel's argument.

"Whether the verdict is one which the court would have assented to, had it been a member of the jury, I believe to be beside the mark, and I feel that the jury, having found as it did, that the court is bound by that finding in the absence of what it believes to be the other error.

"Dated this 11th day of September, 1941."

In so far as the alleged misconduct of counsel for the plaintiff is concerned in the proceeding in the trial court, we are content to adopt the conclusions of Judge Hurly, quoted above.

Taking up now the prejudicial effect of allowing the information to go to the jury, either by way of testimony or arguments of counsel, that the defendant in a personal injury case carried

liability insurance, that question has been before this court in a number of cases, of which *Vonault* v. *O'Rourke,* 97 Mont. 92, 33 Pac. (2d) 535, 542, is outstanding. A number of cases were before this court involving that question prior to the *Vonault Case,* and an increased number have been before us since that decision.

Counsel for plaintiff in the *Vonault Case* in cross-examining the defendant, sought to have the defendant recall and repeat a certain conversation which had occurred between the defendant and a relative prior to the trial, which conversation was not brought into the case nor offered in evidence in plaintiff's case in chief. The defendant was asked this question: "You also stated that she had a burn and had a scar and that you carried insurance to protect you against that kind of a proposition and you thought she should be compensated for it?" The question was objected to as prejudicial to the rights of the defendant, and was also assigned as misconduct on the part of plaintiff's counsel. The court sustained the objection and admonished the jury to disregard "this remark of counsel." After another question or two, counsel for plaintiff started to propound another question, as follows: "I do not want to refer to the part the court has ruled out" etc. Whereupon counsel for the defendant again objected and the court again emphasized its ruling in the matter of the objection and said: "Gentlemen of the jury, I will caution you again to pay no attention to remarks of counsel or to questions asked by counsel to which objection is made and objection sustained. You are to draw no inference of any kind from such remarks or questions."

This reference to insurance in that case was the principal reason for reversing the judgment and ordering a new trial. Such reference was adjudged to be prejudicial error as to the defendant.

Following that case, the question as to whether reference to insurance in personal injury cases was prejudicial or not was involved in the case of *Tanner* v. *Smith,* 97 Mont. 229, 33 Pac. (2d) 547, 551. The court there, in quoting from an annotation

in 74 A. L. R. at page 849, said: ' "The rule is almost universally recognized that in actions for personal injuries or death the fact that the defendant is protected by indemnity insurance against liability for damages cannot, directly or indirectly, be injected into the case by evidence, argument or remarks, so as to influence the jury, and the violation thereof is ordinarily held to be reversible error." ' In accordance with that rule, this court has often condemned the injection of the insurance feature into a personal injury case. (*Robinson* v. *Woolworth Co.*, 80 Mont. 431, 261 Pac. 253; *Wilson* v. *Thurston Co.*, 82 Mont. 492, 267 Pac. 801; *Wilson* v. *Blair*, 65 Mont. 155, 211 Pac. 289, 27 A. L. R. 1235.)

"However, there are certain well-defined and universally followed exceptions to the general rule as stated above. In a general way the rule giving rise to such exceptions may be stated as follows: 'That, if the evidence sought to be introduced is admissible upon an issue or matter materially involved in the case, it cannot be excluded on the ground that it may tend to prove the fact of defendant's insurance, which the plaintiff could not otherwise prove.' (Anotations in 74 A. L. R. 854; *Lahti* v. *McMenamin*, 204 Cal. 415, 268 Pac. 644.) Thus it is generally held that evidence that the defendant is insured may be properly admissible where it is a part of a conversation involving an admission of responsibility by the defendant. (*Schlenker* v. *Egloff*, 133 Cal. App. 393, 24 Pac. (2d) 224; *Dullanty* v. *Smith*, 203 Cal. 621, 265 Pac. 814; *Walter* v. *England*, 133 Cal. App. 676, 24 Pac. (2d) 930; see, also, annotations in 74 A. L. R. 850, and in 56 A. L. R. 1418.)

"In this case the statement made by the defendant to plaintiff's husband at the time and place of the accident may be very properly considered as an admission of negligence. (*Herschensohn* v. *Weisman*, 80 N. H. 557, 119, Atl. 705, 28 A. L. R. 514; *Vonault* v. *O'Rourke*, supra)". Later cases in which the same question was involved are *Meinecke* v. *Intermountain Transportation Co.*, 101 Mont. 315, 55 Pac. (2d) 680; *Ralph* v. *MacMarr*, 103 Mont. 421, 62 Pac. (2d) 1285; *Doheny* v. *Coverdale*, 104

Mont. 534, 68 Pac. (2d) 142; *Francis* v. *Heidel,* 104 Mont. 580, 68 Pac. (2d) 583.

In the *Meinecke Case,* supra, during the cross-examination of one of the witnesses of the defendant "counsel for plaintiff was making inquiry with reference to the custom and practice of the defendant company in securing reports of accidents. The witness said of the report: 'It is then brought into the Anaconda office and turned over to the insurance company.' Counsel for the plaintiff then made the following inquiry: 'Do you send these reports to the office of the insurance company in Butte then?' Objection was interposed, and the court said of the question which had elicited the first response: 'As I understand your question, you asked what his instructions to his drivers were and he told you that the drivers reported to the insurance company?'" An objection to the question quoted was sustained by the court, and it was urged that the injection of the question of insurance into the record was reversible error. We said in that case: "It is apparent, in the light of the trial court's remark, that the subject of insurance was first injected into this case by the witness testifying voluntarily, and not in response to a question by counsel for the plaintiff. * * * It is generally held in most jurisdictions, where similar views obtain to our own, that voluntary, unresponsive and incidental answers disclosing that the defendant carried liability insurance come within an exception to the rule, and where the subject of liability insurance thus creeps into the record, a reversal is not warranted, especially where, as here, the damages are not asserted to be excessive. [Citing numerous cases]." And it was held that reference to insurance in that case was not reversible error.

In the case of *State* v. *Patton,* 102 Mont. 51, 55 Pac. (2d) 1290, 104 A. L. R. 76, it was held that improper questions constantly asked by counsel constituted prejudicial and reversible error.

In *Doheny* v. *Coverdale,* supra, counsel for defendants in the course of his argument asserted that if verdicts were returned against his clients they would fall upon Coverdale, and such

verdicts would wreck him financially. In the course of the closing address, counsel for plaintiff answered that argument in the following words: "Why didn't counsel for defendants ask Mr. Coverdale as to his wealth, so that we would have an opportunity to cross-examine him as to whether he was worth a million dollars * * * or .any extent of his wealth, or as to whether the firm of Coverdale and Johnson had liability insurance?" Thereupon counsel for defendants interrupted and moved for a mistrial, and stated: "I will say to Mr. McCabe we have no public liability insurance." Counsel for defendants then requested the court to admonish the jury relative to the remarks and moved for a mistrial. The court overruled the demand for a mistrial, but instead admonished the jury in most vigorous and emphatic language to disregard all of the remarks. The judgment for plaintiff in that case was for $5,000 and this court held that it considered that moderate and that such moderation in fixing the amount of the damages was an indication that the statement of counsel had no effect upon the jury.

In the case of *Francis* v. *Heidel,* supra, the insurance question was again involved and there this court said: "Appellant bases a claim of reversible error upon the ground that respondent's counsel improperly and prejudicially brought before the jury the fact that defendant was protected by indemnity insurance. The objectionable matter arose in this manner: Plaintiff's counsel was examining her with regard to a certain conversation had with the defendant subsequent to a former trial involving the accident now under consideration. Plaintiff's counsel attempted to obtain from the plaintiff her statement as to what admissions the defendant had made with respect to the accident. Objection was made to this type of questioning, and the objection was overruled. The following statements then came in:

" 'Witness: He told me that he was sorry that we got hurt. He said he didn't know we were taken to the hospital. He also told me he was sorry we didn't win in the last trial; that he would like to have seen me win. That is the only time I have ever talked with him. I have never seen him any time since.

" 'Q. Did he make any reference to his insurance company? A. Yes, he said he would have liked to see me get it from the insurance company.'

"Counsel immediately moved the court to strike out the testimony relating to insurance, and to admonish the jury to disregard it. This the court did. Other references to insurance occurred during the trial without objection.

"It is entirely possible that the introduction of the matter of insurance into the case in this manner, in the absence of any further record on the subject, might have amounted to prejudicial and reversible error on the part of respondent. It must be understood, however, that the mere mention of insurance does not in every instance constitute reversible error. The important and controlling question is, How and under what circumstances was it brought into the case? The following cases decided by this court fairly illustrate a few of the possibilities and varying circumstances under which the question has arisen: *Doheny* v. *Coverdale* [104 Mont. 534], 68 Pac. (2d) 142; *Meinecke* v. *Intermountain Transp. Co.,* 101 Mont. 315, 55 Pac. (2d) 680; *Vonault* v. *O'Rourke,* 97 Mont. 92, 33 Pac. (2d) 535; *Tanner* v. *Smith,* 97 Mont. 229, 33 Pac. (2d) 547; *Wilson* v. *Thurston Co.,* 82 Mont. 492, 267 Pac. 801; *Robinson* v. *[F. W.] Woolworth Co.,* 80 Mont. 431, 261 Pac. 253; *Wilson* v. *Blair,* 65 Mont. 155, 211 Pac. 289, 27 A. L. R. 1235. The general rule announced in those cases may be applied to all cases of similar character and should be helpful generally in such matters. Each case, however, must, generally speaking, stand on its own particular facts and incidents and be determined by the manner and circumstances in which the question of insurance was brought into the case." In an annotation in 95 A. L. R. 389-404, exceptions to the general rule are enumerated at length.

An excellent summary of what does and does not constitute reversible error in cases such as that at bar, when the question of liability insurance is intruded into the case, appears in the case of *Hazeltine* v. *Johnson,* 92 Fed. (2d) 866, 869, a Montana

case decided on appeal by the United States Circuit Court of Appeals of the Ninth Circuit. That case involved an action for personal injury to a boy of twelve. We quote:

"The boy's mother, called as a witness, was asked by counsel for plaintiff what if any conversation she had with the defendant relative to the accident. She replied that the boy was in pain and was crying 'and Mr. Hazeltine turned around and said, "Sonny * * * never mind, it was all my fault, I had to hit you to keep from hitting the other car, but," he said, "I'm insured—."' '

"The court ordered the reply of the witness to be stricken in so far as it related to the subject of insurance. The jury were at once admonished to disregard the statement and were summarily instructed that the question whether the defendant was or was not protected by liability insurance could have no possible bearing on the issues they were called upon to decide. The judge concluded his remarks by stating that 'the question of insurance has no bearing on the case. You must not consider it in arriving at your verdict.'

"The appellant immediately asked for a mistrial, and now insists that the injection of the subject of insurance necessitates a reversal, notwithstanding the action and admonition of the court.

"There are expressions in many cases tending to support the argument of counsel in this respect. On examination of these authorities it is found that they deal with aggravated circumstances, and the language used must be accepted with reservations. *James Stewart & Co.* v. *Newby* [4 Cir.], 266 Fed. 287, 295, is a good example of these cases. It was there held that error in admitting testimony as to the carrying of liability insurance by the defendant was not cured by the subsequent exclusion of such testimony. The court said: 'The general rule is that, where inadmissible evidence has been received during a trial, the error is cured by its subsequent withdrawal, or by an instruction of the court to disregard it. (*Pennsylvania Co.* v. *Roy,* 102 U. S. 451, 26 L. Ed. 141; *Specht* v. *Howard,* 16 Wall.

580

564, 21 L. Ed. 348; *Union P. R. Co.* v. *Thomas* [8 Cir.], 152 Fed. (365), 371, 81 C. C. A. 491; *Armour & Co.* v. *Kollmeyer* [8 Cir.], 161 Fed. 78, 88 C. C. A. 242, 16 L. R. A. (n. s.), 114; *Horsford* v. [*Carolina*] *Glass Co.,* 92 S. C. (236), [256], 260, 75 S. E. 533). 'There is this exception to the rule. Where the evidence thus admitted is so impressive that in the opinion of the appellate court its effect is not removed from the minds of the jury by its subsequent withdrawal, or by the instruction of the court to disregard it, the judgment will be reversed.' (*Armour & Co.* v. *Kollmeyer,* supra; *Throckmorton* v. *Holt,* 180 U. S. 552, 21 S. Ct. 474, 45 L. Ed. 663; *Waldron* v. *Waldron,* 156 U. S. 361, 15 S. Ct. 383, 39 L. Ed. 453; *Horsford* v. [*Carolina*] *Glass Co.,* supra.) * * *

" 'The only purpose for which such evidence is presented is to prejudice the jury, and the poison is of such character that, once being injected into the mind, it is difficult of eradication. Where it is allowed to remain during the whole course of a trial, and by persistent unrebuked references is allowed to influence the jurors' consideration of all the other evidence during the trial, the antidote of a final instruction to disregard the testimony is ineffective. The removal of the fly does not restore an appetite for the food into which it has fallen. The exclusion of the testimony should be prompt and decisive. * * * Not a few of our courts have gone to the extent of holding that a case should be withdrawn from the jury and a mistrial ordered for the mere asking of a question of the character under consideration, on the ground that the effect of it is so harmful that it cannot be removed by the instruction of the court, and that the conduct of counsel in such case is so culpable that he ought not to be permitted to enjoy the fruits of a verdict which might have been influenced by such question.'

"In the *Newby case,* although the evidence concerning insurance was ultimately stricken, the ruling was not promptly made. Counsel brought the matter before the jury almost at the beginning of the trial, and by repeated efforts persistently directed

their attention to it, and it was not until the conclusion of the whole testimony that it was finally excluded.

"In *Brown* v. *Walter* [2 Cir.], 62 Fed. (2d) 798, cited by appellant, the trial court refused to exclude evidence concerning insurance, contenting himself with an admonition to the jury to hold itself impartial in spite of the fact that the defendant was shown to be insured. Because of persistent and repeated references to the subject and the attitude of the trial court toward it, the appellate court ordered a new trial.

"In *Brooke* v. *Croson*, 61 App. D. C. 159, 58 Fed. (2d) 885, 887, the trial court did not exclude testimony that the defendant was insured, failed to caution the jury concerning it, and permitted its submission as evidence 'to be considered by the jury along with the other evidence in the case.' The judgment was reversed.

"The expressions in these and other personal injury cases concerning the incurable nature of such references are to be read in the light of the particular circumstances involved. Here the testimony concerning insurance came in answer to a question which was in itself entirely proper. While the reply of the witness was not strictly responsive, appellant asks us to surmise that counsel knew in advance what the reply would be. The trial court, however, believed that the testimony was inadvertently brought out and that counsel for appellee was taken by surprise. The presiding judge was in a better position than we are to determine that. After all, our concern is not so much with the motives of counsel as it is with the influence of the testimony on the minds of the jury.

"The action of the trial judge was prompt and decisive and the subject of insurance was not thereafter adverted to. There is nothing in the record to indicate that the jury were improperly influenced or that they failed to observe the peremptory admonition of the court. There was an impressive showing of want of due care on the part of appellant and the proof amply warrants the amount of the verdict. There is no occasion to order a reversal here on the unsupported assumption that the jury

582

were by this passing reference rendered incapable of fairly considering the relevant facts or of reaching an impartial verdict. (Compare *Letcher* v. *Skiver,* 99 Okl. 269, 226 Pac. 1029; *Vonault* v. *O'Rourke,* 97 Mont. 92, 33 Pac. (2d) 535; *Tanner* v. *Smith,* 97 Mont. 229, 33 Pac. (2d) 547.''

As a final contention defendant asserts that the damages are ▮ excessive. An investigation of cases involving similar facts and circumstances shows the verdict here was well within what is generally considered as a reasonable amount. (*Kelley* v. *John R. Daily Co.,* 56 Mont. 63, 181 Pac. 326; *McCartan* v. *Park Butte Theatre Co.,* 103 Mont. 342, 62 Pac. (2d) 338, and cases cited.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON and ERICKSON concur.

MR. JUSTICE ANGSTMAN takes no part in the foregoing decision.

Rehearing denied December 12, 1942.