ARNOLD J. WATKINS, Plaintiff and Appellant, *v.* KENNETH WILLIAMSON, Defendant and Respondent.

No. 9512.

Submitted May 20, 1957. Decided August 6, 1957.

314 Pac. (2d) 872.

Mr. Harvey B. Hoffman, Great Falls, for appellant.

Messrs. Graybill, Bradford & Graybill for respondent.

Mr. Hoffman and Mr. Truman G. Bradford argued orally.

MR. JUSTICE CASTLES:

This is an appeal from a judgment for defendant and against plaintiff on the verdict of a jury in an action for personal in-

juries sustained when defendant's truck plunged into a culvert washout near Monarch, Montana.

On June 3, 1953, in Cascade County, a flood disaster occurred, affecting the community near Monarch, Montana, causing great distress from fear of loss of life, limb and property, and people were in dire need of help.

The plaintiff, defendant, and other of their neighbors were gathered for the purpose of combatting the flood in the small town of Raynesford. Word came that help was needed at the Gies' Cabins which were about two miles south of Monarch. A number of the men at Raynesford, all neighbors and friends, responded to the call for assistance and at least four different parties in separate vehicles and at different times left for Monarch. Plaintiff went with one Julius Paulson in a jeep vehicle. Defendant went in his truck accompanied by three men, Kessner, Kelly and McAllister. The defendant, Williamson, had been using his truck all day at Raynesford in fighting the flood, driving it through the water getting the brakes wet. Plaintiff himself had driven the defendant's truck through the water on the day in question.

When defendant and his party arrived at Monarch they stopped at a tavern known as "Cubs Den." Plaintiff and Paulson were already there while some of the other parties had gone on ahead. After the group had been in the tavern for a few minutes, defendant called that there was work to be done, and he and his party accompanied by plaintiff and Paulson went outside to defendant's truck. At that time, shortly before midnight on June 3, 1953, it was very dark and raining hard. After the group got to the truck, Paulson refused to go on account of the rain and conditions of the roads, saying, "It is dangerous and not advisable to go."

Defendant and his three companions got into the cab of defendant's three-quarter ton truck. Plaintiff then got into the cab and sat on the lap of Kelly, making five men in the cab of one small truck. Plaintiff sat next to the right-hand door which could not be closed on account of the crowded conditions of the

cab and rode in said cab with the door open and his head out of the window. Riding thusly, the party proceeded up the road for the purpose of aiding the flood victims, if possible, at the Gies' Cabins.

All of the witnesses for both plaintiff and defendant testified that the maximum speed which defendant traveled was fifteen miles per hour, and that the truck was traveling from three to five miles per hour at the time of the accident. Upon approaching a culvert or bridge across the highway, the defendant noticed about thirty feet ahead of him what he thought for a moment was something lying in the road. He immediately applied his brakes and slowed the truck down to about three or four miles per hour, but on account of the wet brakes, they did not hold; and the truck ran into what turned out to be a hole.

The flood waters had washed out the dirt from under the road, so that the road caved in. Other cars had passed over the same part of the highway in safety just moments prior to the trucks passing. The truck fell into the hole with only the rear wheels left on the pavement. The plaintiff either fell or jumped from the cab, the door being open, and fell into the water in the hole under the truck. The plaintiff was in the water hanging onto the truck and calling for help. None of the other occupants were hurt and were all sitting in their places when the truck came to rest. They climbed out but could not see the plaintiff who was down in the water. It was dark and impossible to see down into the hole. The defendant heard the calls of the plaintiff for help and crawled down into the hole to find him. He pulled the plaintiff from the water to safety and found that the plaintiff had been injured. A few minutes later the entire road collapsed making it impossible for vehicles to pass in either direction.

The plaintiff sustained severe injuries and brought this action against the defendant for damages for the injuries.

The plaintiffs complaint charged that the gross negligence and recklessness of the defendant directly and proximately caused

said personal injuries and damages, and set forth certain acts as being gross negligence and recklessness.

The plaintiff and appellant cites six specifications of error, which for the purpose of this opinion may be grouped under two headings.

The first one is based upon the refusal of the trial court to allow the following evidence to be admitted. The plaintiff's offer of proof was that the witness Watkins, the plaintiff, would testify that in response to his statement to the defendant that he sure got banged up in this deal, and that he would have some nice bills to pay, that the defendant answered him, "Arnie, you don't have to worry, I have insurance and they have to take care of your damage."

The other question, posed by the plaintiff's specifications of error, goes to the giving of instructions by the trial court as to whether or not a guest relationship within the "guest statute" existed between the plaintiff and the defendant.

The first question set forth above will now be considered. The accident occurred shortly before midnight on June 3. Sometime thereafter, the plaintiff was being taken from the scene of the accident near Monarch, by one Bud Gerhart, to the hospital in Lewistown, Montana, accompanied by the defendant and others. They arrived at the hospital on June 4, at about 3:45 a. m. The conversation took place several hours after the accident and many miles distant therefrom. Immediately prior to this statement, the defendant had said the reason he could not stop was he had no brakes. The testimony prior to that time was that the brakes were wet and that was the reason they did not hold. The testimony had also shown that the plaintiff himself had driven the truck through the water during the day. The statement that the brakes would not hold was by no stretch of the imagination an admission of negligence, when it is clear that the reason they didn't was that the truck had been driven through water all day on emergency missions which was no fault of the defendant, the plaintiff himself participating.

Plaintiff has cited Tanner v. Smith, 97 Mont. 229, 33 Pac.

(2d) 547, in support of his theory that such evidence is admissible. In the Tanner case the statement about insurance was at the time of the accident in the heat of the discussion about the driving of the parties involved.

In that case the statement was by its nature an admission of negligence, which as above-noted the statement was not, in this case, and was also made immediately after the accident at a time when it was considered part of the *res gestae*. In the instant case the statement was made several hours after the accident, miles from the scene of the accident and was made in relation to the money that plaintiff would be out as a result of his injuries.

The statement about insurance supposedly made by defendant was not made in response to any accusation on the part of the plaintiff as to the cause of the accident. It was made only to console the plaintiff who was complaining about expenses.

This court has repeatedly held that where an insurance company is not a party to the proceeding, ordinarily any attempt to convey to the jury the fact that a defendant is indemnified by insurance against loss arising from tortuous liability is error. See Vonault v. O'Rourke, 97 Mont. 92, 33 Pac. (2d) 535; Tanner v. Smith, supra. This court did recognize an exception to the general rule in the Tanner case.

The exception to the rule was discussed by this court in Meinecke v. Intermountain Transp. Co., 101 Mont. 315, 55 Pac. (2d) 680. In that case the subject of insurance was injected by a witness testifying voluntarily, and not in response to a question by counsel for plaintiff. It was a voluntary, unresponsive and incidental answer and although the court conceded that it was improper, it did not find it reversible error.

In the instant case, counsel for the plaintiff was deliberately asking questions to elicit the insurance information. A good discussion of this matter was made in this court's opinion in Adams v. Misener, 113 Mont. 559, 131 Pac. (2d) 472, 478. We need not repeat here what was said in that case. However, the court did say: "Each case, however, must, generally speaking,

stand on its own particular facts and incidents and be determined by the manner and circumstances in which the question of insurance was brought into the case.''

It is noteworthy that in all of the Montana cases considering this subject that the question of insurance was allowed in, and the defendant cited it as error. In each case the court determined whether or not it was prejudicial error. In the instant case the lower court refused to allow the evidence in at all.

The interjection of testimony concerning insurance in this case could only have resulted in prejudicing the jury because the defendant carried liability insurance. In no way could it have thrown any light on whether or not defendant was negligent. All parties had testified in full, and the jury could not have been in doubt what caused the accident or as to whether or not defendant was negligent.

Therefore, we hold that the court properly ruled out the statement concerning insurance.

The second question is concerned with whether or not the plaintiff was a so-called guest under the Montana guest statutes. The applicable statutes are as follows:

R.C.M. 1947, section 32-1113, provides: ''The owner or operator of a motor vehicle shall not be liable for any damages or injuries to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, nor for any damages to such passenger's or person's parent or guardian, unless damage or injury is caused directly and proximately by the grossly negligent and reckless operation by him of such motor vehicle.''

R.C.M. 1947, section 32-1114, provides: ''Any person riding in a motor vehicle as a guest or by invitation and not for hire, assumes as between owner and guest the ordinary negligence of the owner or operator of such motor vehicle.''

The trial court gave its instruction in this regard as follows:

''Instruction No. 7: You are instructed that by statute in the State of Montana, it is provided that the owner or operator of a motor vehicle shall not be liable for any damage or injuries to

any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage or injury is caused directly and proximately by the grossly negligent and reckless operation by such owner or operator of such motor vehicle."

"Instruction No. 6: Gross negligence and reckless operation, in driving an automobile, is defined and means conduct in fact that is something more than ordinary negligence, as that term has been defined to you."

"Instruction No. 12: You are instructed that in this case the evidence is undisputed the plaintiff was in defendant's truck as a guest or by invitation, and for hire, so that is what is known as the Montana guest statute, set out in other Instructions, is applicable."

The plaintiff insists that he does not come within the guest statute heretofore set out, and must only have shown ordinary negligence and not gross negligence and reckless operation. In this connection it should be pointed out, as heretofore mentioned, that the complaint in this case was drawn charging specifically gross negligence and recklessness. Aside from that, we believe an interpretation of the statutes involved make it clear that the plaintiff was *a person;* he was riding *by invitation* and *not for hire,* thus bringing himself squarely within the provisions of the statute. The record in this case reveals that the parties were on a rescue mission. No one was paid anything, none of the parties were getting any personal benefit from their efforts, and only the defendant was footing the cost of the transportation. Certainly there was no benefit accruing to the defendant as a result of the mission and all persons went of their own accord.

Therefore, the trial court was correct in its instructions stating that the plaintiff must prove gross negligence or gross recklessness. See Cowden v. Crippen, 101 Mont. 187, 53 Pac. (2d) 98.

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ADAIR:

I concur in the affirmance of the district court's judgment, but not in all that is said in the foregoing opinion.

MR. JUSTICE ANGSTMAN, concurring specially:

I concur in the result reached in the foregoing opinion, but desire to make it clear that I do not subscribe to all that this court has said in prior cases concerning the admissibility and effect of evidence tending to show that the alleged tort-feasor is covered by insurance.