KENNETH MOREHOUSE, Plaintiff and Appellant v.
RUDOLPH E. YLVISAKER, Defendant and Respondent.

No. 11393.
Submitted Sept. 23, 1968.
Decided Oct. 31, 1968.
Rehearing Denied Nov. 18, 1968.
446 P.2d 432.

58

Hoyt & Bottomly, R. V. Bottomly, argued, Great Falls, for appellant.

Morrison & Ettien, Robert D. Morrison, argued, Havre, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment for defendant entered on a jury verdict and from an order denying a new trial.

Plaintiff brought an action on behalf of himself and his wife to recover damages for the wrongful death of their son David, age 4. David was struck and killed by an automobile driven by defendant.

On July 10, 1965, plaintiff, headed east, parked his auto about four feet off highway No. 2 at a turnout located near the old Fresno townsite. With him were his wife and four children, ages 2 to 8 years, or nearly 3 to 9. Plaintiff got out of the car and went over to the townsite to look for bottles and artifacts. He told his family to stay in the car. He did not want them wandering on the highway.

Highway No. 2 is a heavily travelled east-west highway. Weather was good and visibility clear. A freight train on nearby tracks was passing the plaintiff's auto with attendant noise and attraction for children. There was an unobstructed view in both directions for about one-half mile.

A short time after plaintiff left his auto one of the children had to go to the bathroom. The mother told them to stay on the right hand side of the car so she could watch them. The children were ages two to eight. The mother remained in the

car; and, unnoticed two of the boys, David 4, and Kenneth, 7, crossed the highway to watch the train. The mother saw the boys across the highway but she remained in the car. She observed no traffic.

The defendant, a Lutheran minister, was driving his auto easterly on highway No. 2. He first noticed plaintiff's auto parked off the road when he was about 1/3 mile away. At about 1/4 mile he recognized people at the parked car. At about 1/8 of a mile he recognized two figures across the highway on the north. The defendant saw the two children, facing the train to the north, standing north of the shoulder of the highway near the edge of the borrow pit. When he first saw the boys he blew his horn. He began slowing down. He continued to slow down. When he saw the larger of the two boys turn and start across the highway he "dynamited" his brakes. The larger boy made it. The younger boy, David, started, hesitated, and then ran across the highway. 204 feet of skid marks of defendant's car were left on the highway surface. David was struck when he nearly reached plaintiff's car and was killed instantly.

Up to this point there is no dispute in the evidence. But, as to the passing freight train with its attendant noise and the lapse of time while plaintiff left to search for bottles and artifacts, plaintiff argues that not more than one minute elapsed. Plaintiff bases this on the speed of the train from the distance travelled and elapsed time based upon railroad records. Yet those same records show two trains within ten minutes of each other. A reading of plaintiff's testimony as to his walk from the auto over to the townsite where an old tavern had been, going behind the buildings and being east of the buildings when he saw his wife running towards the defendant's car, all indicated elapsed time to have been more than one minute. However, this conflict, if it be one, is not of significance.

The case was submitted to the jury after a motion to dismiss was denied and a unanimous verdict was returned for defendant.

The issues for review are three-fold:

(1) Conduct of defense counsel.

(2) Conduct of trial court.

(3) Instructions given and refused.

██ The first issue concerns the final argument made by defense counsel in which he said among other things:

"The question is, shall plaintiff and wife profit from own wrong doing and Reverend Ylvisaker suffer a mental and financial punishment or shall the blame, if any there was, rest upon the mother and father, who knowingly permitted their children to go unattended in a place of known danger * * *.

"Once again are the parents going to profit by their wrong doing? Is Reverend Ylvisaker going to be punished mentally and financially for doing what was reasonable and safe. You may decide who was at fault or perhaps that no one was at fault. No money can return this child, let us put this terrible tragedy to rest forever, let neither party bear the heavy burden of guilt, a verdict for the defendant will do this."

After the conclusion of the final argument of both plaintiff and defense counsel, the following transpired:

"MR. BOTTOMLY. I would like to make a motion outside of the hearing of the jury.

"THE COURT: At this stage of the game, all right.

"(Whereupon, the jury was duly admonished by the Court and excused at 2:10 P.M.)

"MR BOTTOMLY: If it please the Court, on two occasions in the closing argument counsel for the defendant suggested that the defendant would suffer financial ruin or detriment and punishment as a result of any verdict. This is clearly improper and it is putting insurance in in reverse and there is a case directly in point where counsel got up and argued to the jury that it would ruin the jury (sic), but what counsel didn't say is how much insurance the defendant had.

"THE COURT: He hadn't said.

'MR. BOTTOMLY: But when the other counsel got up to argue the Supreme Court held that this was absolutely Court error, he had to counter act so I am making the motion now.

"THE COURT: Are you going to make a statement to the jury as to how much?

"MR. BOTTOMLY: No.

"THE COURT: Because if you are going to you will get a mis-trial now.

"MR. BOTTOMLY: That is why I am making this motion right now, I am asking this Court to admonish this jury there is no evidence that the defendant will suffer any financial punishment as a result of any verdict that may be rendered and admonish counsel concerning that statement.

"THE COURT: I am not going to do it, bring in the jury, your motion is denied.

"MR. BOTTOMLY: Is it proper for me to make a comment that there is no evidence that the defendant will suffer financial detriment before the trial?

"THE COURT: If you draw in the question of insurance there will be a mis-trial.

"MR. BOTTOMLY: I won't.

"AFTER RECESS, 2-15 P.M.

"THE COURT: Stipulate that the jury are all present?

"MR. BOTTOMLY: Yes, sir.

"MR. MORRISON: So stipulated.

"(WHEREUPON, Mr. Bottomly makes the closing argument for the plaintiff.)"

The foregoing exchange perhaps only makes sense in the context of the opening of the case when defense counsel moved to dismiss a subpoena duces tecum issued immediately before trial for a Mr. Kitt, an insurance adjuster. In an exchange then, the trial court warned plaintiff's counsel not to involve insurance. While the court did not rule on the motion, Kitt was never called as a witness and no suggestion or offer of proof was made as to any relevancy or materiality his presence

might have. The trial judge observed that Mr. Kitt was the only insurance adjuster in the town of Havre where trial was held. Plaintiff's counsel tacitly admitted that they had no reason to call Kitt, other than their statement—"We want him if we need him, we can not anticipate." No discovery proceedings were had prior to trial.

As a preface to appellant-plaintiff's argument in his brief, mention is made of the community of Havre being a Lutheran community; and that somehow the use of the word "guilt" in defense counsel's statement had an impact out of the ordinary because the defendant was a Lutheran minister. In the same strange context the appellant implies that defense counsel, being the county attorney of Hill County, had an undue influence in using the word "guilt". We shall not attempt to analyze this strange argument other than to reject it.

Aside from these inferences, the appellant's claim of error is that counsel's comments on "mental and financial punishment" as used here has a prejudicial effect in the opposite manner from the injection of insurance coverage by a plaintiff which has been held by this Court to be ordinarily reversible error. (See Avery v. City of Anaconda, 149 Mont. 495, 428 P.2d 465, and cases cited therein.)

Appellant relies on the reasoning in Doheny v. Coverdale et al., 104 Mont. 534, 557, 68 P.2d 142, 148, where it said:

"An examination of the record here would indicate that the statement of counsel for defendants that there was no liability insurance really had more effect upon the jury than did the injection of the matter into the case. * * *"

Appellant reasons that defense counsel, in effect, told the jury that defendant carried no liability insurance. We observe that perhaps in the context of plaintiff-appellant counsel's previous efforts and the warnings of the trial judge, [all out of the presence of the jury], this would be the effect, but we doubt that any such effect would have been understood by the jury. All of the previously rejected inferences of the

religion of the community and the popularity of the county attorney would have to be brought in. Such would result in inferences ad infinitum.

We note that in Doheny this Court did not find the alleged misconduct prejudicial. It relied on the rule that it is for the trial court to determine whether the alleged error is sufficient to justify a mistrial; and that before the action of the trial court will be disturbed an abuse of discretion must be shown. The Court went on to look at the results of the case and found no substantial rights of the defendant's affected.

Here, in the instant case, we have a unanimous verdict. The trial court let the matter go to the jury. The court allowed argument that there was no evidence that the defendant would suffer financial detriment. We find no abuse of discretion.

The second issue raised is as to the conduct of the trial court. Appellant has laboriously included excerpts of the record. He argues that while the trial judge treated defense counsel with "kid gloves", he constantly commented on plaintiff's counsel's efforts. We shall not dwell on this other than to observe that counsel's efforts were commented on only after they ignored the trial court's rulings. Necessarily a large discretion rests in the trial court for orderly conduct of a trial and to reverse a trial court requires a clear showing of abuse of discretion. (Larson v. Great Falls City Lines, 119 Mont. 593, 178 P.2d 410; Rule 61, M.R.Civ.P.)

In the same issue, that of conduct of the trial court, appellant claims error in rulings of the trial court on objections to testimony attempting to show damages from pecuniary loss from support during minority. Keep in mind we are talking about a four year old child! The trial court actually let the testimony go to considerable lengths, and we find his rulings within reason.

The third grouping of issues concerns instructions given and refused. The trial court refused to give instructions

which in effect would allow the jury to decide whether or not one of the beneficiaries, the plaintiff father or mother, was not negligent; and that under the situation here the negligence of the mother would not be imputed to the father.

Here, the evidence as testified to by the father and mother was that the mother remained in the auto and did nothing to attend to the safety of the infant children. The father, seeing the children outside the auto on a busy highway in a dangerous place, not attended by the mother, did nothing but continue his search for bottles and artifacts. Surely, under these conditions, both parents were negligent. And, most surely, this is not a situation where a jury should be allowed to separate the negligence by instructions of imputation of negligence. There was joint control of the children. If there was a case against defendant at all, it was on the last clear chance doctrine, and the court instructed on that theory.

Appellant also claims error in the giving of other instructions. We have examined these and find no merit.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE HUGH ADAIR concur.

MR. JUSTICE HASWELL (dissenting):

I dissent.

In my view, the final argument of defense counsel quoted in the majority opinion suggests to the jury that the defendant has no liability insurance and must pay any judgment rendered against him out of his own pocket.

Under Montana law, it is not permissible to convey to the jury in a negligence action that the defendant is protected by liability insurance (subject to exceptions not pertinent here). Watkins v. Williamson, 132 Mont. 46, 314 P.2d 872; Johanek v. Aberle, D.C.Mont., 27 F.R.D. 272. The reason for this is that the existence of liability insurance has no bearing

on whether the defendant is negligent or not. Watkins v. Williamson, supra.

As I see it, it is equally impermissible to suggest to the jury in a negligence action that the defendant is not protected by liability insurance for precisely the same reason. (See 4 A.L.R. 2d 773-774 and cited cases in accord.) It simply has nothing to do with any issue in the case.

Ordinarily, injection of the fact that defendant is protected by liability insurance into such a case, directly or indirectly, by evidence, argument, or remarks constitutes reversible error. D'Hooge v. McCann 151 Mont., 353, 443 P.2d 747; Avery v. City of Anaconda, 149 Mont. 495, 428 P.2d 465; Adams v. Misner, 113 Mont. 559, 131 P.2d 472; Doheny v. Coverdale, 104 Mont. 534, 68 P.2d 142; Vonault v. O'Rourke, 97 Mont. 92, 33 P.2d 535. I see no reason to hold to the contrary when the shoe is on the other foot. I would place a suggestion of the absence of liability insurance on the same footing as a suggestion of its presence. The prejudicial nature of the one is as great as the other particularly where, as here, the trial involves deep emotional issues affording the jury other opportunities to get sidetracked from the primary issue of negligence.

For the foregoing reasons I would reverse the judgment in favor of the defendant and remand the case to the district court for a new trial.