DOHENY, ADMINISTRATRIX, RESPONDENT, *v.* COVERDALE ET AL., APPELLANTS.

(No. 7,630.)

(Submitted May 3, 1937. Decided May 20, 1937.)

[68 Pac. (2d) 142.]

*Mr. Howard Toole* and *Mr. W. T. Boone,* for Appellants, submitted a brief; *Mr. Toole* argued the cause orally.

538

*Mr. E. J. McCabe* and *Mr. H. C. Hall,* for Respondent, submitted a brief; *Mr. McCabe* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

These are appeals from two judgments rendered in the district court of Cascade county. Ethel M. Doheny is the mother of Roberta Doheny and Marguerite Doheny, now deceased. She prosecuted two actions as administratrix of the respective estates of her daughters, against John M. Coverdale and E. O. Johnson, copartners doing business under the firm name and style of Coverdale & Johnson. The suits were against the partnership, as such, and not against the individual partners, although service was made upon Coverdale individually, and he filed a separate demurrer and later a separate answer. The judgments, however, were entered against the partnership.

The causes were based upon the death of the daughters in an automobile accident. They were instituted separately but were combined for the purpose of trial. Separate verdicts were returned by the jury and judgments entered accordingly.

The facts out of which the cases arose are as follows: The partnership had a contract with the State Highway Commission

544

for the construction of certain road and bridge improvements in the vicinity of the town of Augusta west of the city of Great Falls. Each of the partners had an individually owned automobile which was apparently from time to time used in and about the construction work. On December 10, 1934, Coverdale was absent from the vicinity of the contract work and at his home in Anaconda. Johnson was present and in charge of operations. One Bardon was employed by the partnership as timekeeper. The partnership had leased certain machinery from a resident of Great Falls. On the date mentioned the use of the machinery had been consummated, and Johnson directed a truckman in the employ of the firm to load the machinery on a truck and transport it to Great Falls. He designated a point in that city where he would meet him and thereafter direct him to the premises of the owner and assist in the unloading. The truck driver started upon the trip early in the evening. Thereafter Johnson in his own car, in company with Bardon, left Augusta and drove to Great Falls. On this trip Johnson and Bardon were accompanied by the two Doheny girls and by two men, none of whom were connected with the firm's operations. The record does not disclose the circumstances or conditions attendant upon the presence of these other passengers in the car. The Johnson party of six met the truck driver at the designated place in Great Falls—a restaurant, or beer parlor. Thereafter Johnson proceeded with his party to the premises of the owner of the machinery and was followed by the truck driver. This was approximately 11 o'clock at night. Johnson ascertained and designated the proper place for the deposit of the machinery, and he and the two male passengers, other than Bardon, assisted in the unloading. Bardon and the Doheny girls did not get out of the car. The only part taken by Bardon was that he moved the car into a position where the lights would shine upon the unloading operations. After the machinery had been unloaded the truck driver returned to Augusta. The record does not disclose what became of the two male passengers.

Johnson and Bardon later proceeded upon their return to the company headquarters at Augusta. This trip was made over a public highway which was a main graveled thoroughfare about 30 feet wide. The road passed through the town of Simms, west of Great Falls. About 20 minutes before 5 o'clock on the morning of December 11th, while the car was proceeding along the highway through the town of Simms, the accident occurred. Bardon was driving and Roberta Doheny was in the seat beside him. Johnson and Marguerite Doheny were in the back seat. Almost directly in front of the residence of one Dawson, the car, which apparently had been traveling on the right side of the highway, turned to the left at an angle of approximately 45 degrees, ran off the road, and head-on into a large tree. The car was wrecked and all. of the passengers were more or less injured. Bardon and the two Doheny girls died as a result of the injuries without making any statements.

Johnson was not served with process. He did not voluntarily appear and did not testify as a witness in the damage actions. He had testified, however, at the coroner's inquest held previously with relation to the death of one of the girls. His testimony was admitted by agreement. He stated that he was sitting on the back seat covered with a coat half asleep; that he did not know what happened; that the car was traveling at about 35 miles an hour; that Bardon was driving; that the party had not been drinking; that nobody was intoxicated; and that none of the party had been to bed that night. There was a definite allegation in the complaint as to excessive speed, but there was no direct evidence with relation to that fact. Thus it will be observed that the whole matter really depended upon circumstantial evidence.

The admitted facts were that Coverdale and Johnson were copartners doing business under the firm name of Coverdale & Johnson; that Johnson was the owner of the automobile; that Bardon was an employee of the partnership; that the equipment was delivered to Great Falls; and that the accident occurred on the return.

The complaint also alleged that there was gross negligence and recklessness in the driving of the automobile at an excessive rate of speed of 50 or 60 miles an hour; that the driver permitted the car to turn from the highway and crash into the tree; that the road was smooth, unobstructed, 30 feet wide, and in a safe condition for travel; and that there was a clear and unobstructed view for a distance of approximately one-half mile west and one mile east of the place of the accident. The other allegations were of a formal character.

The answer in effect alleged that if the Doheny girls accompanied Johnson and Bardon in the automobile, they did so without the authority of the partnership or of Coverdale, one of the partners, but upon the personal invitation of Johnson and Bardon; that such invitation or permission so to ride was outside the scope of the authority given by the partnership, and outside the scope of the partnership business; and that the injuries to the guests were therefore not the result of any negligence on the part of the partnership or on the part of Coverdale personally.

The issues so made were tried to one jury and resulted in the two verdicts.

A number of assignments of error are made and urged. They may be grouped so as to present only two or three points. The first point had to do with the sufficiency of the pleadings. Demurrers to the complaint were filed and overruled. Objections were made to the introduction of testimony. Motions for nonsuit were made, and finally motions for directed verdicts in favor of the defendants were made and overruled. Some of the specifications are based on refusal to give instructions, on instructions given, and on the modification and the giving of other instructions. One specification has to do with statements made by one of counsel for the plaintiff in the argument to the jury.

We have stated that the proof of the facts as to the occurrence consisted almost entirely of circumstantial evidence. Some of the assignments of error involve the allegations of the complaint and the alleged insufficiency of the testimony. It is argued that there was no evidence at all as to the occurrence,

and therefore nothing upon which the defendants could be held. In this respect the case is exactly like the plaintiff's case in *Harrington* v. *H. D. Lee Mercantile Co.*, 97 Mont. 40, 33 Pac. (2d) 553, 559. There this court said: "What caused Thompson's car to run into the fence? There was not any witness to the accident, but the facts constituting negligence may be established by circumstantial evidence, if such evidence tends more strongly to establish the theory of the plaintiff than an inconsistent one." Such was the situation here. We are of the opinion that the jury had a right to make a determination of the issues, including the alleged gross negligence and reckless operation of the car, upon circumstantial evidence.

The actions were prosecuted under the provisions of what is known as the "guest statute," sections 1748.1 et seq., Revised Codes. The Act provides that the owner or operator of a motor vehicle shall not be liable for damages or injuries to a passenger or person riding in a motor vehicle as a guest or by invitation and not for hire, unless the damage or injury is caused directly and proximately by the grossly negligent and reckless operation of such motor vehicle; that any person riding in such a vehicle as a guest or by invitation, and not for hire, assumes, as between owner and guest, the ordinary negligence of the owner or operator of such motor vehicle; and that such ordinary negligence is imputed to the passenger so riding. This statute was construed and explained by this court in the case of *Nangle* v. *Northern Pac. Ry. Co.*, 96 Mont. 512, 32 Pac. (2d) 11. There the distinction between liability in ordinary cases and guest cases was explained. The statute was also under consideration by this court in the cases of *Cowden* v. *Crippen*, 101 Mont. 187, 53 Pac. (2d) 98, and *Harrington* v. *H. D. Lee Mercantile Co.*, supra. It is not necessary to repeat what was said so recently in those cases.

A comprehensive consideration of all of the assignments of error, including the objections to the sufficiency of the complaint, the objections to the introduction of testimony, the overruling of the motions for nonsuit, and the motions for an in-

structed verdict, and the motions for a new trial, leads us to the conclusion that there is but one really important question involved. That question has to do with the relations of principal and agent, and of partners. Most of the contentions arose from the differences involved in the construction of those relationships.

The fact that one of the partners was in the car throughout the trip and at the time of the accident may not affect the legal relationships of the parties. It is, however, worthy of consideration. We have a statute which declares that every general partner is agent for the partnership in the transaction of its business, and has authority to do whatever is necessary to carry on such business in the ordinary manner. (Sec. 7997, Rev. Codes.) We also have a statute which declares that each partner is the trustee of the other within the meaning of the trust provisions of our Codes. (Sec. 7989, Id.) The legal relationship existing between the copartnership and Johnson at the time of the accident was, strictly speaking, that of principal and agent; yet there was at least some distinction in fact between that relationship as it there existed, and the relationship that would have existed between a principal and an agent who was merely an employee, or a chauffeur. (47 C. J., secs. 289, 290, p. 826.)

Our investigation discloses that this court has never had for consideration a case presenting the exact situation here involved. Most of the cases have had to do with the relation of straight-out principal and agent, not confused by the presence, at the time of an accident, of a partner. In all of such cases this court has very consistently held that where an employee, an agent, was engaged on some mission of his own, as distinguished from his principal's business, at the time of the accident, the principal could not be held. This matter was stressed in the case of *Monaghan* v. *Standard Motor Co.*, 96 Mont. 165, 29 Pac. (2d) 378; also in the case of *Harrington* v. *H. D. Lee Mercantile Co.*, supra; and in several other cases recently decided by this court. Those cases are not exactly in point here;

they are clearly distinguishable from this case by the fact that in each instance the agent had deviated from the transaction of his employer's business and was engaged in some mission of his own at the time the accident occurred.

Neither does the principle here involved come exactly within the purview of what was under consideration in the case of *Staff* v. *Montana Petroleum Co.*, 88 Mont. 145, 291 Pac. 1042, 1045. There, however, this court did approve some general rules and make some pertinent statements. It there said: "A servant may abandon his master's employment for the time to accomplish some purpose of his own. If in accomplishing this purpose he does an injury to another, his master is not liable; but a mere deviation from the master's directions with reference to the business in which he is employed is not an abandonment of his employment, and so long as he is doing some act in furtherance thereof he will be regarded as acting within its scope, and the master will not be excused on the ground that he did not authorize the particular act, or that he had no knowledge of it, or that in doing it the servant exceeded his authority." The court there quoted with approval the following general rule: " ' ' "The rationale of the master's liability for tortious acts which 'come within the scope of the servant's general duty, although in doing the particular act complained of he may have exceeded his authority,' is that, in most cases where a duty is to be performed or an act done by a servant, some discretion must be vested in him to whom the doing of it is committed; and, where this is so, the master cannot enjoy the benefit of his servant's acts which involve this discretion without being responsible for their result. The rule is held especially applicable 'where the master is absent, and the duty to be performed vicariously is general in character, as in the case of conductors of public vehicles, railway servants and the like.' " (6 Labatt on Master and Servant, 6868.) Again, in *Wegge* v. *Great Northern Ry. Co.*, 61 Mont. 377, 203 Pac. 360, 362, this court used this language: 'Long ago, the Supreme Court of the United States repudiated subtle refinements in fixing the mo-

ment when the relation of employee and employer begins and when it ends. (*Philadelphia & R. Ry. Co.* v. *Derby*, 14 How. 468, 14 L. Ed. 502 (see, also, Rose's U. S. Notes), *New Jersey Steamboat Co.* v. *Brockett*, 121 U. S. 637, 7 Sup. Ct. 1039, 30 L. Ed. 1049.) The distinctions involved in the term "scope of authority" are not to be drawn so fine that a particular act may be declared upon as a matter of law, unless the evidence is in such condition that reasonable men will not be likely to differ in its interpretation. If the act "be done in the course of his [the servant's] employment, the master is liable; and it makes no difference that the master did not authorize, or even know of the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable if the act be done in the course of his servant's employment.'' ' To the same effect are *Kirk* v. *Montana Transfer Co.*, 56 Mont. 292, 184 Pac. 987; *Grorud* v. *Lossl*, 48 Mont. 274, 136 Pac. 1069; *Hoffman* v. *Roehl*, 61 Mont. ·290, 203 Pac. 349, 20 A. L. R. 189.''

These quoted statements do not exactly fit this case, for the reason that in the case then under consideration the servant of a gas company, a meter reader, only deviated from his usual employment to examine a leaky meter, and in the course of such examination lit a match which caused an explosion with resultant injury to plaintiff. The court very carefully pointed out the fact that the deviation was not important.

In volume 3 of the new work Corpus Juris Secundum, Agency, pp. 186 and 187, this matter is discussed with considerable particularity. There the author makes the following statement: "If the agent steps aside from the principal's business, for however short a time, to do acts not connected with such business, the relation of agency and the agent is for that time suspended, and the agent is not acting within the scope of his employment.'' It will be observed that this statement does not exactly meet the situation here. Nevertheless, both statements have bearing on the subject.

It seems to us that the difficulty here encountered arises from the fact that there is confusion of the act of inviting the girls

into the car, or of having them in the car however they may have got in there, with the subsequent wrecking of the car and the resultant injury of the occupants.

The courts are pretty well divided on the subject of the liability of a master whose servant invites a guest into the master's car for a ride. An examination of the cases—and they are numerous—leads us to the conclusion that the same confusion we have mentioned is very largely responsible for the divergent results reached by courts. We do not assume to say here that a master, the owner of a car, is or is not liable, generally speaking, for injury to a gratuitous passenger taken into the car on the invitation of the chauffeur without the master's knowledge. Nearly all of the decisions stress the fact that each case must stand upon its own state of facts, and that whatever may be said in a given case is predicated upon the facts of that case. We have uniformly recognized that rule as a general proposition of law. (*McCulloch* v. *Horton,* 102 Mont. 135, 56 Pac. (2d) 1344, and cases cited.) Therefore, in deciding the question in this case we do not assume to lay down an inflexible rule that may be considered a guide in future cases which only involve the master and the servant without relation to the fact that one of greater authority, such as a partner, may be present and participate in the act or in the invitation to the passenger, or in fact may be the legal agent.

It seems to us that for the purposes of this case we may with justice follow a rule recognized by the supreme court of the state of Missouri in a number of cases. The case of *Stipetich* v. *Security Stove & Mfg. Co.,* (Mo. App.) 218 S. W. 964, 966, was a case where a ten year old boy was apparently permitted by a truck driver for the defendant to ride in the truck. The boy was injured in attempting to climb on the truck. The court said: "The act of negligence upon which liability is predicated is not the driver's invitation to the boys to get on and take a ride, but it was his act of suddenly and violently starting the truck when he knew the boy was in danger and would likely be hurt thereby. The evidence concerning the driver's invitation

was merely to explain the boy's presence at the truck, attempting to get on. It showed how he happened to be there, but the sudden starting of the truck while the boy was attempting to climb on was the cause of his death, and if the driver knew of his situation when he started the truck it was an act of culpable negligence. He was clearly acting within the scope of his employment in starting and driving the truck. His invitation to ride was an act beyond the scope of his authority, and hence, as to the driver's employer, the boy was in law a trespasser, or occupied that status. But, even so, the driver in the subsequent prosecution of his master's business owed the boy the duty of using reasonable care not to injure him after he was discovered and known to be in a place of imminent danger or peril.'' (See, also, the following cases: *Bobos* v. *Krey Packing Co.*, 317 Mo. 108, 296 S. W. 157; *Galba* v. *Payne*, (Mo. App.) 253 S. W. 137.)

Here there can be no question that the trip made in the car owned by Johnson was a partnership trip. Some point was made with relation to the fact that the car belonged to Johnson. In the case of *Meinecke* v. *Intermountain Transp. Co.*, 101 Mont. 315, 55 Pac. (2d) 680, 683, this court said: ''The fact that Torgeson in making this trip was driving a car not the property of the defendant company, and which he ordinarily used for his own personal service, will not preclude plaintiff from recovery.'' Ample authority was given for that holding. The same is applicable here. The point has no legal effect.

The record shows that the car was a comparatively new Ford V-8, current year's model, and that it was in good shape. After the accident there was some evidence of injury to the steering apparatus, but the record discloses that that injury was more than likely due to the impact of the car against the tree. There was nothing to indicate that anything had gone wrong with the mechanism of the car before it hit the tree. There was no evidence from the tracks that the brakes had been applied, that the wheels had slipped, or that the accident was in anywise due to faulty mechanism or to anything other than the failure of the driver properly to hold the car on the road.

There was no deviation from the master's business—that is, from the partnership business. There is nothing in the record to show that the car was driven on an individual errand of either Johnson, the partner, or Bardon, the employee. As far as the record discloses, the trip was made directly on a main-traveled road from Augusta to Great Falls, and the return on the same road was in progress without deviation at the time of the accident. The trip was unquestionably made in the course of the partnership business. We think that the authorities are very uniform in holding that such a trip would have involved the partnership in liability for an accident occurring in the course of the trip by reason of the grossly negligent operation of the car. For instance, had the two girls been standing by the roadside in the town of Simms instead of sitting in the car, and had the chauffeur run into them in exactly the same manner that he went off the road and collided with the tree, there would have been unquestioned liability. That, then, puts us back to the very proposition mentioned by the Missouri court in the case mentioned above, where it was said: "The act of negligence upon which liability is predicated is not the driver's invitation * * * but it was his act of suddenly and violently starting the truck." Here the act of negligence was not the invitation to the girls to ride or the sufferance of their presence in the car with or without invitation, but the negligent act of the driver in allowing the car to go off the road and collide with the tree. In this connection we do not believe that the question of speed had very much to do with the matter. The fact remains that the car was going at sufficient speed to wreck it and to kill three of the four passengers.

It was not an inherently illegal act for either Johnson or Bardon to take the girls into the car. Our law recognizes the fact that guests may be legally transported in cars. The statute on the subject does not make the presence of such an occupant in a car illegal; it merely assumes to define the obligations and liabilities existent between the owner of such car and the so-called guest passenger.

There can be no doubt that if both of the partners had been present the liability would have been absolute and probably unquestioned. Here the difficulty arises from the fact that but one partner was present. The other was absent and, of course, had no knowledge of the fact of the invitation or the presence of the passengers in the car.

While, as we have said, the theory of principal and agent is the theory upon which partnership matters of this character must generally proceed, nevertheless the fact does remain that partnership business is ordinarily transacted by one partner just as legally and effectively, as to third persons, in the absence of the other partner, as though both partners were present. The necessity for authority to enable one partner to transact partnership business and bind the partnership is the reason for the existence in our Codes of the statutes heretofore mentioned. The legislature went as far as it could in view of all of the general principles of law involved to create in a partner the element of absolute authority consistent with the principles of agency and trusteeship.

We have examined the assignments of error involving the instructions offered and given. It appears to us that the court was consistent in recognition of the theory of the law which we have here announced. For instance, an instruction was given to the following effect: "You are instructed that unless you find from a preponderance of the evidence that E. O. Johnson and George S. Bardon were acting within the scope of the business of the partnership in inviting or permitting Marguerite Doheny to ride in said automobile, then your verdict must be for the defense." The defendants insisted that there should be included in the instruction the words "in furtherance" before the words "of the business of the partnership." The court refused to include the words, doubtless on the ground that the liability would be unduly restricted by the presence of such words in the instruction. We think the court was right in view of what we have already said in this opinion. It seems to us that the inclusion of the words would have changed the whole theory of the case and would have made it almost incumbent

upon the court to grant a new trial, because no one could reasonably contend that the record shows that these girls were taken along on the trip or were in the car for the furtherance of the business of the partnership. It would follow that in the absence of any such showing, plaintiff's case would have failed.

As a whole, the instructions were very carefully prepared, and, while some of them may not have been necessary, they fairly tendered the issues of fact to the jury and defined the law under which the facts were to be decided.

The only additional assignment of error necessary to discuss involves the alleged misconduct of counsel for plaintiff in his final argument to the jury. Counsel for defendants in the course of his argument asserted that if verdicts were returned against his clients, they would fall upon Coverdale, and indicated that such a contingency would wreck him financially. In the course of the closing address, counsel for plaintiff answered that argument in the following words: "Why didn't counsel for defendants ask Mr. Coverdale as to his wealth, so that we would have an opportunity to cross-examine him as to whether he was worth a million dollars or more millions, or any extent of his wealth, or as to whether the firm of Coverdale and Johnson had liability insurance?" Thereupon counsel for defendants interrupted and moved for a mistrial, and stated: "I will say to Mr. McCabe we have no public liability insurance." Counsel for defendants then requested the court to admonish the jury relative to the remarks and moved for a mistrial. The court overruled the demand for a mistrial, but instead admonished the jury in most vigorous and emphatic language to disregard all of the remarks.

It is argued that the suggestion of liability insurance constituted reversible error under the rule laid down in the case of *Vonault* v. *O'Rourke*, 97 Mont. 92, 33 Pac. (2d) 535, and other cases decided by this court. As a general rule, it is for the trial court to determine whether alleged error of this character is sufficient to justify a mistrial. The action of the court will not be disturbed unless it is apparent that its discretion has been

556

abused.   (20 R. C. L., sec. 19, p. 234; *Loggie* v. *Interstate Transit Co.,* 108 Cal. App. 165, 291 Pac. 618; *Mangino* v. *Bonslett,* 109 Cal. App. 205, 292 Pac. 1006; *Allen* v. *Autenrieth,* .(Mo. App.) 280 S. W. 79; *Gibbs* v. *Barton,* 3 N. J. Misc. 1025, 130 Atl. 439.)

The situation presented is almost identical with that described in the opinion of *Big Ledge Copper Co.* v. *Dedrick,* 21 Ariz. 129, 185 Pac. 825, 827, which involved an action for injuries to an employee.   Counsel for the employer stated in his argument that defendant was practically broke, and that a judgment against it would cause irreparable damage and practically put it out of business.   Counsel for plaintiff in reply to this suggestion mentioned the matter of insurance.   The appellate court made the following observations: ''Counsel for plaintiff justifies his excursion outside of the record, and claims his remarks were made only for the purpose of counteracting the poverty plea made in behalf of defendant.   To uphold such a contention may seem to reverse the old adage, 'Two wrongs never make a right'; but at the same time it preserves the rule that forbids one from taking advantage of a wrong that he himself has provoked.''   Corpus Juris lays down practically the same rule. (64 C. J. 281; see, also, *Allen* v. *Autenrieth,* supra.)

It is apparent that both counsel went outside the record.   We do not, however, deem the incident sufficiently prejudicial to justify a reversal, especially in view of the fact that the court admonished the jury so vehemently, and no claim is made that the verdicts are excessive.   In nearly all of the Montana cases where the injection of such matter was held to constitute reversible error, the matter was brought into the case either in the examination of the jury or in the introduction of testimony. This case is clearly distinguishable from that of *Vonault* v. *O'Rourke,* supra, and the other Montana cases.   Generally speaking, misconduct of counsel is not often held to constitute reversible error unless the charge is coupled with the claim of excessive damages; although we do not agree with counsel for respondent that the case of *Meinecke* v. *Intermountain Transp.*

*Co.,* supra, overruled or seriously modified the rule recognized in *Vonault* v. *O'Rourke,* supra.

An examination of the record here would indicate that the statement of counsel for defendants that there was no liability insurance really had more effect upon the jury than did the injection of the matter into the case. A judgment for $5,000 for a death seems to us to be moderate. In view of that fact, and of the further fact that counsel for the defendants, instead of standing upon his rights in the matter, assumed to answer the proposition very effectively, and in view of the fact that the matter did not enter the case in such a manner as to bring the proposition within the scope of our previous decisions, we hold that whatever error was committed in this respect was cured by the admonition of the court. The error did not affect the substantial rights of the defendants. (Secs. 9191, 12125, Rev. Codes; *Cashin* v. *Northern Pac. Ry. Co.,* 96 Mont. 92, 28 Pac. (2d) 862; *Olson* v. *City of Butte,* 86 Mont. 240, 283 Pac. 222, 70 A. L. R. 1352.)

We have examined all of the assignments of error and find no reversible error in the case.

The judgments are affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.