No. 02-613

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 50

ROBIN JENKS and CATHY JENKS,

        Plaintiffs and Appellants,

   v.

NEIL BERTELSEN,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                  In and For the County of Lincoln, Cause No. DV 2000-144,
                  Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Joe Bottomly, Sean Hinchey, and Amy Eddy, Bottomly Law
                Offices, Kalispell, Montana

        For Respondent:

                Susan Moriarity Miltko and Scott Corbitt, Williams & Ranney,
                Missoula, Montana

Submitted on Briefs:  January 3, 2003

Decided:  March 2, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    The plaintiffs and appellants, Robin and Cathy Jenks (Jenkses), brought a negligence action in the Nineteenth Judicial District Court to recover damages for personal injury from Neil Bertelsen (Bertelsen), defendant and respondent, arising out of an automobile accident. Following a trial and jury verdict, the District Court denied the Jenkses' motion for a new trial. The Jenkses appeal. We affirm.

¶2    The following issues are presented on appeal:

¶3    1. Did the District Court err in excluding plaintiffs' evidence of dealings with the insurance carrier in response to the defendant's theory that plaintiffs had hired an attorney for the purpose of manufacturing an exaggerated claim?

¶4    2. Was the jury's verdict supported by substantial evidence?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5    The facts regarding the accident were largely undisputed. On November 14, 1998, Robin Jenks was driving his 1989 pickup truck south on Highway 2 near Libby, Montana, with Cathy, his wife, as a passenger. As Robin signaled, slowed, and stopped to make a left hand turn, they were struck from behind by Bertelsen's vehicle at approximately 50 m.p.h. The force of the impact was significant causing extensive damage to the body and frame of the Jenkses' truck, and causing Cathy Jenks's head to strike the rear window of the truck, shattering the glass.

¶6    The Jenkses filed a negligence action in the Nineteenth Judicial District Court on November 9, 2000, seeking to recover against Bertelsen for loss of the value and use of their

2

vehicle, medical expenses, pain and suffering, lost wages and costs. Bertelsen admitted liability prior to trial, and the Jenkses' property damage claims for their vehicle were settled before trial. The case proceeded to trial on the sole issue of damages for personal injuries.

¶7 The major contested issue at trial involved the nature and extent of Cathy Jenks's claimed soft tissue injury. Plaintiffs presented evidence of treatment by four health care professionals: an emergency room physician, an orthopedic surgeon, a neurologist, and a chiropractor. Defendant presented independent medical evidence (IME) from another orthopedic surgeon, as well as evidence offered by a vocational consultant regarding Cathy Jenks's ability to work in her current employment. The parties disagreed about Jenks's damage claims for past medical expenses, future medical expenses, loss of earnings, and general damage claims. Following a three-day trial beginning January 29, 2002, the jury returned a verdict in the amount of $9,873.00.

¶8 On the first day of trial, the defense counsel stated during opening statements that the Jenkses hired an attorney within a week after the accident, which, plaintiffs contend on appeal, impugned them as being litigious. Plaintiffs, however, made no contemporaneous objection nor motion *in limine* to prevent further such remarks during the course of the trial. Later in the day, during cross-examination, defense counsel again implied that the Jenkses were hasty in hiring an attorney, to which plaintiffs again made neither objection nor motion *in limine*.

¶9 On the second day of trial, plaintiffs made an offer of proof requesting leave of the court to present testimony during Cathy Jenks's redirect examination that the reason the

3

Jenkses hired an attorney so soon was that the defendant's insurance adjuster was being unfair in his valuation of their damaged truck. Plaintiffs asserted that this evidence was necessary to counteract defense counsel's remarks about their hiring of an attorney.

¶10 The District Court denied plaintiffs' request to pursue this line of questioning on grounds Rule 411, M.R.Evid., generally prohibits injection of liability insurance into trial proceedings. However, to counteract defense counsel's remarks, the District Court permitted the Jenkses to offer testimony that they hired an attorney because they were having difficulty getting their "transportation problem" resolved, which the Jenkses did.

¶11 Following the trial the Jenkses filed a motion for a new trial on two grounds: (1) the District Court erred in not admitting the evidence plaintiffs sought to introduce regarding their reasons for hiring an attorney, and (2) the verdict was not supported by substantial evidence. On April 8, 2002, the District Court denied the motion. Plaintiffs appeal. We affirm.

## STANDARD OF REVIEW

¶12 Questions concerning the admissibility of evidence are within the discretion of the trial court, subject to our review in situations that indicate an abuse of discretion. *Newbauer v. Hinebauch*, 1998 MT 115, ¶ 15, 288 Mont. 482, ¶ 15, 958 P.2d 705, ¶ 15. A district court has broad discretion to determine whether evidence is relevant and admissible. *Lopez v. Josephson*, 2001 MT 133, ¶ 14, 305 Mont. 446, ¶ 14, 30 P.3d 326, ¶ 14. The district court's decision whether to grant a new trial is committed to the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of discretion. *Newbauer,* ¶ 15.

4

Additionally, this Court has consistently held that "parties must make their objections known to the trial court at the time the objectionable conduct or evidence is introduced in order to preserve the issue for purposes of appeal." *Cosner v. Napier* (1991), 249 Mont. 153, 154, 813 P.2d 989, 990.

## DISCUSSION

### Issue 1

**¶13    Did the District Court err in excluding plaintiffs' evidence of dealings with the insurance carrier in response to the defendant's theory that plaintiffs had hired an attorney for the purpose of manufacturing an exaggerated claim?**

¶14    The Jenkses argue that the District Court erred in excluding evidence of their dealings with the insurance carrier in response to defendant's remarks that plaintiffs hired an attorney within a week of the accident. The Jenkses contend the defendant's remarks impugned them as being litigious and were so inflammatory and prejudicial as to warrant a new trial. In support of this assertion, the Jenkses cite references to their haste in hiring an attorney made by defense counsel during the trial. On the first day of trial, during defendant's opening statement, defense counsel stated:

> This clearly is a case about Ms. Jenks's demand for money . . . very shortly after this accident, in fact, less than a week after the accident, Plaintiffs hired an attorney and started preparing for today. Started preparing for this lawsuit.

Plaintiffs, however, made no objection to this comment nor moved *in limine* to prevent further such remarks. Then, during cross-examination of Cathy Jenks, also on the first day

5

of trial, defense counsel again made reference to the haste in which the Jenkses hired an attorney:

Q:      . . . Do you know when you hired an attorney in this case to begin making your claim against Neil?

A:      I think it was the following week after the accident.

Q:      Any more specific?  Within three days, four days, five days?

A:      I don't know.

Q:      But you think it was within a week?

A:      Yes.

Q:      So at that point you didn't know the full extent of your injuries.  Am I correct in saying that?

A:      Yes.

Q.      Didn't know how badly you were hurt?

A:      Nope.

Q:      Or whether you would recover?

A:      That wasn't the reason.

Again, plaintiffs made no objection nor motion *in limine.*  During closing arguments, in attacking the credibility of both Cathy Jenks and the diagnosis of her neurologist, defense counsel argued that the doctor "assumed no litigation in her case.  This, despite the fact she [the plaintiff] ran to an attorney just six days after the accident."  Even to this, the plaintiffs did not object.

¶15    Rather than making a contemporaneous objection to defense counsel's "litigious remarks" as soon as the grounds became apparent, the Jenkses submitted an offer of proof on the second day of trial which asserted that these remarks had "opened the door" for them to present testimony that defendant's insurance adjuster was being unreasonable about the damaged truck. The District Court responded by crafting its own remedy to the problem, as it explained in its order denying plaintiffs' motion for a new trial. First, the court condemned the defendant's references to plaintiffs' haste in hiring an attorney:

> The Court agrees that it is sharp practice for defense counsel to imply that a plaintiff is greedy because he or she contacted an attorney soon after the event which resulted in the plaintiff's loss. Accident victims should be able to seek legal counsel whenever they feel the need, without fear that their prompt attention to a legal problem will be thrown back in their faces at trial. It demeans our profession to suggest to a jury that there is something nefarious about an injured person promptly seeking out legal representation after an accident.

Then, the court castigated the plaintiffs' failure to object to these comments, or make a motion *in limine* to prevent any further references by defense counsel to their hiring an attorney, either during the opening statement or during cross examination on the first day of trial, only to later argue that the comments justified introduction of insurance evidence. The court stated, "[Plaintiffs' counsel] cannot be permitted to employ a rope-a-dope strategy, in the expectation that the Court will permit the insurance bulldozer to be brought in to level the playing field."

¶16    The court further explained that its remedy provided an adequate mid-trial correction, in light of the errors of both parties. The court's remedy permitted plaintiffs' counsel to

elicit the response from Cathy Jenks on redirect examination that the reason the Jenks came to him initially was to address their "transportation problem," without saying the word *insurance*. This would enable plaintiffs to present explanatory evidence to the jury that would counteract the implication by the defendant that they quickly hired an attorney for a nefarious reason, such as greed or a desire to "cash in" as a result of the accident, but would also, according to the District Court, simultaneously prevent placing evidence before the jury indicating that Bertelsen possessed liability insurance.

¶17    Thus, on the second day of trial, during redirect examination of Cathy Jenks, plaintiffs' trial counsel elicited that the reason the Jenkses had hired him within a week after the accident was to "work out the truck issues":

> Q:    Okay.  You were asked yesterday a question about when you went to see an attorney, is that right?
>
> A.    Yes, I was.
>
> Q.    And you went to see an attorney about a week after the accident, is that right?
>
> A.    Yes, I did.
>
> Q.    And you and Robin--Robin works, is that right?
>
> A.    Yes, he does.
>
> Q.    And Robin, at the time, worked and needed a vehicle?
>
> A.    Yes.
>
> Q.    And his truck was a work vehicle?
>
> A.    Yes, it was.

8

Q. And did you go to see an attorney because of working out the truck issues?

A. Yes, I did.

Q. At that time did you think you were permanently hurt?

A. No, I didn't.

Q. Did you know if you were going to be permanently hurt?

A. No, I didn't.

Q. And as a part of seeing an attorney, did you make a decision to wait and see what would happen before going anywhere?

A. Yes, I did.

Q. And that was communicated to Mr. Bertelsen?

A. Yes.

¶18    As an initial consideration, Bertelsen asserts, and the plaintiffs do not deny, that plaintiffs failed to timely object to defense counsel's comments about the Jenkses' hiring of an attorney during opening statements and cross-examination. Accordingly, Bertelsen argues that this failure constitutes a waiver of the Jenkses' right to contest these remarks on appeal.

¶19    However, following the District Court's explanation of the remedy it had fashioned and would impose upon the parties, plaintiffs' counsel indicated that ". . . I have offered [insurance] evidence in the written form. The Court has denied that, over my objection, and without waiving my position that I'm correct, I will follow what the Court has said." Thus, though there was a failure to timely object to the comments made by defense counsel, plaintiffs did interpose a record objection to the remedy adopted by the District Court in

9

response to plaintiffs' offer of insurance evidence, and thus preserved its challenge to that remedy on appeal. *In the Matter of Custody and Parental Rights of M.W. and C.S.*, 2001 MT 78, ¶ 31, 305 Mont. 80, ¶ 31, 23 P.3d 206, ¶ 31 (for this Court to review an alleged error, an objection generally must be made at the time the court made the alleged error, and it must be specific so that the court is given an opportunity to correct itself).

¶20 Both parties center their respective arguments on Rule 411, M.R.Evid. Rule 411, M.R.Evid., states:

> **Rule 411. Liability insurance.** Evidence that a person was or was not insured against liability is not admissible upon the issue of whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

The Jenkses argue that the District Court should have admitted evidence of their dealings with the insurance carrier under the exception to Rule 411, M.R.Evid., found in the second sentence of the rule. They argue that since their evidence was not being offered to prove Bertelsen acted negligently or otherwise wrongfully, but rather for another purpose, specifically, to counteract the alleged prejudicial effect of defense counsel's implication that plaintiffs were litigious, it properly fell under sentence two. Bertelsen responds that the District Court properly excluded the evidence of plaintiffs' dealings with the insurance carrier under Rule 411's general prohibition of the admission of evidence of liability insurance found in the first sentence of the rule.

10

¶21    Further, Bertelsen contends that admission of liability insurance evidence would have constituted a direct violation of Rule 403, M.R.Evid., which permits exclusion if the probative value of evidence is outweighed by the danger of unfair prejudice:

> **Rule 403.  Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**  Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Bertelsen contends that had the District Court granted the Jenkses' offer of proof and permitted them to offer evidence of their dealings with his insurance adjuster, such evidence would have been prejudicial to him.  He argues that the probative value of allowing the Jenkses to present evidence of their dealing with the insurance carrier would have been outweighed by the prejudicial effect to him because it would have indicated to the jury that he possessed liability insurance, that this liability insurance was applicable to the claims at trial, and that the liability insurer had acted wrongfully in its efforts to settle the Jenkses' property damage claims.

¶22    The general rule is that the introduction of evidence of liability insurance is generally not admissible under Rule 411, M.R.Evid.  *Newbauer*, ¶ 17 (citing *Sioux v. Powell* (1982), 199 Mont. 148, 152-54, 647 P.2d 861, 863-64; *D'Hooge v. McCann* (1968), 151 Mont. 353, 359-60, 443 P.2d 747, 750).  The Commission Comments to Rule 411, M.R.Evid., establish that one of the primary reasons for exclusion of insurance evidence is its prejudicial effect: "The primary reasons for exclusion of evidence of insurance are its irrelevance, prejudicial effect, and potential misuse by the jury."  The Commission Comments also state that,

generally, when the fact of insurance is injected into trial proceedings, it constitutes reversible error:

> Although not strictly a rule of evidence, Montana also follows the rule that: "Ordinarily injection of the fact that the defendant is protected by liability insurance into such a case, directly or indirectly, by evidence, arguments, or remarks constitutes reversible error."

(citing *D'Hooge,* 151 Mont. at 359-60, 443 P.2d at 750). This Court has held it to be reversible error (1) when one party mentions another party's liability insurance during voir dire (*Wilson v. Thurston Co.* (1928), 82 Mont. 492, 267 P. 801); (2) when counsel repeatedly attempts to inject the insurance feature into the case with such force that the jury could scarcely miss the point (*D'Hooge*, 151 Mont. at 360, 443 P.2d at 751); and (3) when evidence that a plaintiff does <u>not</u> have liability insurance is introduced (*Sioux,* 199 Mont. at 153, 647 P.2d at 864) ("Evidence of the absence of insurance can be as prejudicial as evidence of the presence of insurance.").

¶23    However, the Commission Comments also recognize that "[i]t is apparent that there are exceptions to the rule" such as those stated in Rule 411, M.R.Evid.: "when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." This Court has held that it is not reversible error when (1) an admission of liability contains reference to insurance (*Tanner v. Smith* (1934), 97 Mont. 229, 240, 33 P.2d 547, 551); (2) the existence of insurance is injected in the case by a witness for the insured party through a "voluntary, unresponsive, and incidental answer" (*Meinecke v. Intermountain Transp. Co.* (1936), 101 Mont. 315, 324, 55 P.2d 680, 682; *Adams v. Misener* (1942), 113 Mont. 559, 573, 131 P.2d 472, 475); (3) the insured party mentions that it has insurance

12

during voir dire (*Francis v. Heidel* (1937), 104 Mont. 580, 588, 68 P.2d 583, 585); (4) in response to a "poverty plea" by defendant during closing argument, plaintiff mentions defendant's liability insurance, coupled with an admonition by the court to the jury (*Doheny v. Coverdale* (1937), 104 Mont. 534, 555-56, 68 P.2d 142, 148); (5) during cross-examination, the question which elicited the fact of insurance was asked to demonstrate the witness's general lack of judgment and, thereby, to undermine his credibility as a witness (*Massman v. City of Helena* (1989), 237 Mont. 234, 244, 773 P.2d 1206, 1212); (6) mention of liability insurance is "inadvertent and innocuous" (*Newbauer*, ¶ 18); and, (7) defense counsel fails to object to opposing counsel's mention of liability insurance (*Rasmussen v. Sibert* (1969), 153 Mont. 286, 295, 456 P.2d 835, 840; *Cosner* 249 Mont. at 154, 813 P.2d at 990; *Reno v. Erickstein* (1984), 209 Mont. 36, 45, 679 P.2d 1204, 1209).

¶24 This Court held it to be reversible error when evidence admissible under the exception to Rule 411, M.R.Evid., for the purpose of proving bias or prejudice of a witness, was introduced without foundational testimony to establish the purpose for which it was admitted (*Heisler v. Boule* (1987), 226 Mont. 332, 338-39, 735 P.2d 516, 520). Similarly, it was reversible error for a district court to exclude admissible evidence under Rule 411, M.R.Evid., when offered for the purpose of showing compliance with UIM policy condition of settlement with tortfeasor before looking to UIM insurer for recovery (*Dill v. Montana Thirteenth Judicial Dist. Court*, 1999 MT 85, ¶ 22, 294 Mont. 134, ¶ 22, 979 P.2d 188, ¶ 22).

¶25    These cases, which do not represent an exhaustive survey, illustrate the conclusion made by the Commission Comments that the determination as to whether mention of insurance constitutes "reversible error" depends upon the facts and circumstances of each individual case:

> [T]he reversible error rule has been viewed by the Montana Supreme Court as a problem where "each case . . . must, generally speaking, stand on its own particular facts and incidents and be determined by the manner and circumstances in which the question of insurance was brought into the case." *Francis v. Heidel* [(1937), 104 Mont. 580, 588, 68 P.2d 583, 585].

And, it is well settled that the district court has the responsibility, on a case-by-case basis, of determining whether any particular injection of insurance into a trial warrants a reversal:

> [T]he District Court is charged with determining whether any given mention of liability insurance is sufficiently prejudicial to warrant a new trial and that the court's determination depends upon the circumstances and manner in which the subject of insurance came up.

*Newbauer*, ¶ 18; *see also Doheny*, 104 Mont. at 555, 68 P.2d at 148. The important and controlling question is, how and under what circumstances was mention of insurance brought into the case? *Adams,* 113 Mont. at 578, 131 P.2d at 477. In the final analysis, Rule 411, M.R.Evid., and the exceptions thereto, do not present a clear mandate for either admitting or denying evidence of liability insurance. What is clear, however, from a review of the case law, is that district courts have broad discretion in determining the admissibility of evidence pertaining to liability insurance:

> As a general rule, it is for the trial court to determine whether alleged error [regarding admissibility of evidence of liability insurance] is sufficient to justify a mistrial. The action of the court will not be disturbed unless it is apparent that its discretion has been abused.

14

*Doheny*, 104 Mont. at 555, 68 P.2d at 148.

¶26 A review of the District Court's actions here reveals the court was faced with a dilemma: defense counsel had erred by insinuating to the jury that plaintiffs were litigious, but plaintiffs' counsel had also erred in failing to object to these remarks. As we have held, offering grounds for an evidentiary objection a day after the objection was made does not constitute a timely and specific objection. *Spinler v. Allen*, 1999 MT 160, ¶ 38, 295 Mont. 139, ¶ 38, 983 P.2d 348, ¶ 38; *see also Hunt v. K-Mart Corp.*, 1999 MT 125, ¶ 10, 294 Mont. 444, ¶ 10, 981 P.2d 275, ¶ 10 (failure to make a timely and specific objection constitutes a waiver), and Rule 103(a)(1), M.R.Evid. (error may not be predicated upon a ruling which admits or excludes evidence unless . . . a timely objection or motion to strike appears of record . . . ). The District Court noted that the damage caused by defense counsel "could have been minimized by a motion in limine to exclude any further mention of the issue," but that "Plaintiffs' counsel did not make such a motion in limine or object in any way . . . ." Plaintiffs' counsel's inaction thus had the practical effect of allowing the trial to sink into deeper error through a tacit acquiescence of defense counsel's comments, followed by what the trial court perceived to be an inappropriate request by plaintiffs to introduce insurance into the proceedings: "[Plaintiffs' counsel] cannot be permitted to employ a rope-a-dope strategy . . . ."

¶27 In its order denying plaintiffs' motion for a new trial, the District Court explained that it believed that permitting plaintiffs to explain their pretrial conduct of hiring an attorney in terms of "working out the truck issues" was preferable to having the trial get "sidetracked"

on the issue of whether or not the adjuster was treating plaintiffs unfairly in valuing their truck. The court noted that if the trial got "sidetracked" while the attorneys were arguing about whether plaintiffs' truck was worth more than the insurance adjuster was willing to pay, the unintended message the jury would be receiving would be "the defendant is insured, so any money awarded to plaintiffs will be paid by an insurance company." The court concluded that permitting the "insurance bulldozer to be brought in to level the playing field" would have constituted a "dramatic overcorrection," and that inserting insurance into the proceeding would confuse the issues, delay the trial, and severely prejudice the rights of the defendant.

¶28 Thus, it is clear that the District Court weighed the competing concerns, considered the errors committed by both sides, and employed conscientious judgment in fashioning a remedy. The Jenkses were allowed to effectively respond to the defense's insinuations about the reasons they hired an attorney, without unnecessarily injecting insurance into the trial. While we concur with the District Court's criticism of defense counsel's actions, we cannot conclude, given the particular circumstances of this case, that the District Court abused its discretion or otherwise acted unreasonably in responding to the situation as it arose, particularly in light of the trial errors committed by both parties. The admission of insurance evidence into this trial was a matter within the District Court's discretion, and we find no abuse of that discretion. Accordingly, we affirm the District Court.

**Issue 2**

¶29 **Was the jury's verdict supported by substantial evidence?**

## STANDARD OF REVIEW

¶30    The Supreme Court reviews a jury verdict in a civil case to determine whether substantial credible evidence in the record supports the verdict. *Ele v. Ehnes*, 2003 MT 131, ¶ 25, 316 Mont. 69, ¶ 25, 68 P.3d 835, ¶ 25. In determining whether substantial evidence supports the verdict, the evidence will be viewed in the light most favorable to the party that prevailed at trial. *Mountain West Farm Bureau Mut. Ins. Co. v. Girton* (1985), 215 Mont. 408, 410, 697 P.2d 1362, 1363. It is not our function to agree or disagree with the jury's verdict and, consequently, if conflicting evidence exists, we do not retry the case because the jury chose to believe one party over the other. *Magart v. Schank*, 2000 MT 279, ¶ 4, 302 Mont. 151, ¶ 4, 13 P.3d 390, ¶ 4. It is only in rare cases that a jury verdict should be set aside. *Magart*, ¶ 4. The Supreme Court will not disturb a judgment based upon substantial evidence "especially . . . when the District Court has upheld the sufficiency of the evidence on a motion for a new trial." *Keil v. Glacier Park*, *Inc*. (1980), 188 Mont. 455, 461, 614 P.2d 502, 505.

## DISCUSSION

¶31    The Jenkses assert that the trial court abused its discretion when it refused to grant a new trial based upon insufficiency of the evidence to support the jury's verdict. The Jenkses argue that the verdict contradicted undisputed evidence. They contend that the jury's total award of $9,873.00 amounts to less than plaintiffs' evidence of past and future medical expenses, loss of past and future wages, and pain and suffering. Plaintiffs assert that Cathy Jenks's past medical expenses of $9,540.46, which were admitted into evidence without

17

objection, coupled with Bertelsen's concession of a past wage loss of $1,959.00, Jenks's current and ongoing limitation in work schedule from forty to thirty hours per week (constituting a loss of ten hours per week at a rate between $10.80 and $12.92 per hour), and her continuing physical pain which will require future medical care, unquestionably amount to more than the jury's total award. Plaintiffs state that the jury must have awarded zero amounts on one or more categories of damages which undisputedly existed.

¶32 Bertelsen contends he presented evidence contesting plaintiffs' evidence on each of the issues of past and future medical bills, past and future wage loss, and pain and suffering. Bertelsen presented evidence which indicated that several months prior to the car accident involved in this case, Cathy Jenks had suffered similar injuries from a fall at home. Bertelsen's evidence also indicated that Jenks had not been completely candid with her current medical providers regarding this prior injury. Thus, Bertelsen argues that the jury could have concluded that some of her complaints pre-dated the accident.

¶33 Bertelsen further presented evidence tending to establish that Jenks's medical bills were excessive. Each of Jenks's doctors testified that she should undergo physical therapy to develop her own home strengthening program, however, she failed to adhere to these programs and did not maintain her own program at home, thus failing to mitigate expenses. Although plaintiffs argue there was no dispute among the various physicians' testimony that Jenks would need some kind of future medical care, Bertelsen's IME physician testified that a number of Jenks's continued complaints arose from her repetitious work as a grocery checker, and that continued physical therapy and chiropractic care would be excessive.

18

¶34 Further, regarding past and future wage loss, the jury had before it conflicting testimony regarding a ten-hour per week limitation imposed upon plaintiff's work schedule by her neurologist. The plaintiffs argue that none of the health care providers disagreed with the ten-hour per week work restriction. However, Dr. Schimpff, Jenks's neurologist, admitted on cross-examination that his limitation of her work schedule was premised on false information regarding her prior injuries and the length of time before she began experiencing her current complaints. Although plaintiffs asserted Jenks's total past and future wage losses totaled $237,000.82, defendant's IME physician testified he saw no evidence suggesting her injuries limited her time at work. Further, Bertelsen presented evidence that Jenks was proficient at her job and was working more at the time of trial than she had before the accident occurred.

¶35 Regarding pain and suffering, plaintiffs contend the jury erroneously gave zero for this element of the award. In support of this contention plaintiffs note all health care providers agreed Jenks's condition was chronic, including defendant's IME physician. However, Bertelsen presented evidence that Jenks had similar complaints prior to the accident, and that Jenks remained active in all areas of her life.

¶36 As we recently noted in *Renville v. Taylor*, 2000 MT 217, 301 Mont. 99, 7 P.3d 400, if the jury award is insufficient to cover *uncontested* expenses, then it is not supported by substantial evidence. However, such is not the case here. Evidence presented by both parties revealed a significant dispute in the nature, cause, and severity of the injury, the need

for future treatment, the existence and amount of past and future wage loss, and pain and suffering.

¶37 The District Court stated in its order denying plaintiffs' motion for a new trial that, in this trial, a number of factors comprised the calculus for arriving at an award, and most of those factors were subject to interpretation which were addressed to the discretion of the jury:

> [t]he nature of Cathy Jenks's injuries, the cause and nature of any physical limitations, the effect of any limitations upon Ms. Jenks's employment and earning capacity, the extent to which she mitigated her damages or failed to do so, the reasonableness of her medical treatment, the effect of any prior injuries upon her treatment and condition, the extent to which she suffered and continues to suffer pain, the effect of her injuries upon her ability to enjoy her established course of life, the credibility of the witnesses, and the weight to be given to expert testimony . . . .
>
> There is no question that the jury could have returned a greater award on the basis of the evidence, but that is not to necessarily say that there is not substantial credible evidence to support the verdict returned. The undisputed damages were not greater than the amount of the verdict, and the jury is entitled to place whatever value it deems proper on disputed damages.

¶38 It is not the duty of this Court to retry the case and evaluate the facts. Rather, we review a jury's verdict to determine whether there is substantial credible evidence in the record to support it. Based on a review of the record before us, we conclude there was sufficient evidence presented to support the jury's award of damages. This Court will not disturb a judgment especially when the district court has upheld the sufficiency of the evidence on a motion for a new trial. *Keil,* 188 Mont. at 461, 614 P.2d at 505. Therefore, we will not overturn the jury's verdict.

¶39 Accordingly, we affirm the judgment entered herein.

20

/S/ JIM RICE

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ PATRICIA O. COTTER