JUSTICE COTTER
dissents.
¶49 I dissent from the Court’s resolution of Issue Three. I would reverse and remand for a new trial.
¶50 The District Court erred when, citing M. R. Evid. 411, it *380 completely prohibited any mention of an insurance or pooling arrangement. In Jenks v. Bertelsen, 2004 MT 50, 320 Mont. 139, 86 P.3d 24, cited prominently by Eklund but not in my judgment adequately considered in the Court’s analysis, we noted that under our previous caselaw there are a number of exceptions to the general prohibition against injecting insurance issues into a case under M. R. Evid. 411. See Jenks, ¶¶ 23-24. We cautioned that such cases “do not represent an exhaustive survey ....” Jenks, ¶ 25. When the District Court issued a prohibition on any mention of insurance prior to trial, it did so under the evident assumption that the exceptions to M. R. Evid. 411 were fully codified, and that failure to meet a specifically enumerated exception to M. R. Evid. 411 prohibited, ipso facto, any mention of insurance. The District Court’s approach to this issue was contrary to Jenks. “In the final analysis, Rule 411, M.R.Evid., and the exceptions thereto, do not present a clear mandate for either admitting or denying evidence of liability insurance. What is clear, however, from a review of the case law, is that district courts have broad discretion in determining the admissibility of evidence pertaining to liability insurance ....” Jenks, ¶ 25. Thus, district courts should evaluate the admissibility and effect of a mention of insurance on a case-by-case basis under the facts and circumstances then presented to the court. Jenks, ¶ 25.
¶51 The facts and circumstances presented in this case called for an exercise of discretion in favor of revealing the existence of insurance. Eklund sought to disclose the existence of an insurance pooling arrangement to allay the concerns of the citizens of this small county about the potential impact of a sizeable verdict upon them. However, he was prohibited by the District Court from doing so, and was instead only permitted to inquire whether any of the jurors’ status as taxpayers would affect their ability to render a judgment against Wheatland County. In other words, he was allowed to raise their worries but not relieve them. When Eklund’s counsel attempted during voir dire to walk this fine line, one of the potential jurors, Butts, zeroed in quickly on the forbidden topic. He said:
Wheatland County, which is made up of people that live here. And we’re certainly insured by an insurance company, I would think, that might be responsible for some of the money. But I’m not sure if it would be responsible for all of the money. I don’t know how much of that would be passed onto the citizens or residents of the county. I mean I don’t know, so I’m a little apprehensive. And, you know, I’ll follow the law and what I’m instructed to do the best *381 that I can, but some of us have ingrained prejudices already that may taint our decision or judgment. And I’m not trying to be difficult here. I’m just trying to be honest, okay.
The question was thus early and squarely presented in the presence of the entire panel: Do we have insurance, and is it enough? Yet, the District Court would not allow the question to be answered, placing Eklund in an even worse position than he occupied before the answer was given.
¶52 Remarkably, the District Court denied Eklund’s request to have this juror dismissed for cause, even though he clearly indicated that he had an ‘ingrained prejudice” on the issue of the source of payment for any judgment against Wheatland County. This candid statement from the juror was an unequivocal demonstration of concern at best, and bias at worst, especially given Eklund’s inability to allay the spoken concerns. Under other circumstances, I would conclude that the District Court committed reversible error by failing to dismiss Butts for cause. Here, however, I doubt that excusing him for cause would have made any difference, once the entire panel heard the insurance question asked but go unanswered.
¶53 The effect that this statement had on Eklund’s right to receive a fair trial cannot be overstated. After Butts made his statement, the District Court gave no corrective instruction or admonishment, and then rejected attempts to have this juror removed for cause. This was a clear signal to the members of the jury that their questions about where the money would come from, and the extent to which any insurance arrangement would cover them, would not be answered, and further that having such worries would not disqualify them from serving on the panel. In fact, a second juror voiced these same unanswered concerns. That juror was seated.
¶54 Once these overt concerns about whether there was any insurance to protect the County were laid before the entire jury panel, the District Court should have reevaluated its position with regards to the mention of insurance. I conclude that the District Court’s blanket prohibition on any mention of insurance constituted an abuse of discretion at this point, and was unreasonable in light of Eklund’s constitutional right to a fair and impartial trial. Jenks and M. R. Evid. 411 clearly allowed the District Court to take corrective action and briefly explain the insurance arrangement, since it would be done not to prove negligence or wrongful action on behalf of Wheatland County, but only to ensure that the jury’s concerns were allayed sufficiently to allow Eklund a fair and impartial trial.
*382 ¶55 At the conclusion of trial, the District Court gave the following jury instruction:
In determining the amount of damages, you may not consider, even a little, the following:
1) Whether the Defendant can afford it.
2) Whether it might raise your taxes.
3) Whether it is a windfall.
¶56 As an initial matter, I find it hard to reconcile the District Court’s instruction that jurors were not to consider “even a little” whether a judgment against Wheatland County would raise their taxes, with its denial of Eklund’s request to have Butts dismissed for cause. For not only did this juror consider the issue significant, he clearly indicated that it was on the level of an ‘ingrained prejudice” and would have an impact on his deliberation. These two rulings are simply irreconcilable in my judgment.
¶57 The greater problem is that this instruction compounded the prejudice to Eklund, who sought to have the prospect of insurance at least mentioned in the list of factors “not to be considered.”Essentially, the instruction highlights the three negative prospects that a verdict for the plaintiff would present-one, we can’t afford this; second, it might raise our taxes; and third, the plaintiff may reap a windfall at our expense. It highlights no potentially saving factors, like the existence of insurance, again making matters worse for Eklund.
¶58 In sum, the handling of voir dire, the restrictions on Eklund, and the District Court’s instruction combined at best to leave the jury panel actively worried throughout trial about what a verdict might mean to their pocketbooks. At worst, the refusal to address the jury’s concerns and the ensuing refusal to mention insurance in the instruction may well have left the impression that no insurance existed at all. Either way, Eklund was prejudiced.
¶59 At a fundamental level, the District Court’s unreasonable disregard of the jury’s concerns placed Eklund, an innocent and badly injured citizen, at a severe disadvantage. Leaving the front-burner question of how a verdict might be satisfied unresolved in the minds of the jurors from this small rural town prevented him from having his case decided on the merits. While similar concerns seldom arise in larger states, or even within larger counties in Montana, here they were open and real. The District Court should have weighed the “competing concerns,” and employing its “conscientious judgment,” see Jenks, ¶ 28, should have either allowed Eklund to reference an insurance agreement, or told the jury directly that an arrangement of *383 some sort existed. After all, Eklund himself is a taxpayer too and deserves, as do all the citizens of this state, the opportunity for a fair and impartial trial. I believe the District Court’s rulings in this case unreasonably denied him this right and constituted an abuse of discretion. I would reverse and remand for a new trial and respectfully dissent from the Court’s failure to do so.